Elias Aronson, J.
This is a motion brought to vacate the issuance of a warrant of arrest and to dismiss an information as being jurisdictionally defective.
The defendant was first arrested in violation of section 177 of the Code of Criminal Procedure and taken to the police station; while there confined, an immediate information was prepared, a warrant of arrest issued. She was then again arrested pursuant to the warrant and brought before the court for arraignment. At the time of the arraignment the court on its own motion adjourned the matter for all purposes to the following day, and paroled the defendant in her own custody. Despite this parole, defendant was then physically taken to the Middletown State Police barracks some 23 miles away, and fingerprinted and photographed. This constituted a third arrest, since the court by its parole released the defendant from custody until at least the next day; and the charge was not one of those indicated as coming within the purview of sections 940 and 552 of the Code of Criminal Procedure.
Although the initial arrest in violation of section 177 of the Code of Civil Procedure was illegal (People v. Papp, 19 Misc 2d 331; Ranke v. State of New York, 206 Misc. 569; People v. Moore, 11 N Y 2d 271), in the case of People v. Ostrosky (95 Misc. 104) it was held in effect, if, while defendant is in custody, an information was legally and properly prepared and was in proper form and context, though made on information and *874 belief, and which included the source of the information, and was supported by a properly executed affidavit sufficient to justify the issuance of a warrant, then warrant could properly issue (People v. Mezzatesta, 203 Misc. 253), just so long as the information contains the offense charged, the time of the commission of the offense, the place of its commission and a proper verification. The purpose of the warrant is to bring the defend-. ant before the court; the purpose of the information is to advise the defendant of the charge against her and to enable her to prepare for trial. (People v. Sharpe, 207 Misc. 39.) All that is necessary is that the Magistrate, on the papers before him, be satisfied that the statutory provisions had been complied with (Code Crim. Pro., § 150, .subd. 2). Thereafter, since an information is a pleading, defendant may at any time move to dismiss the information on the ground that it is jurisdictionally defective (People v. Lee, 151 Misc. 431), or, like any pleading, by uncontroverted facts, or contested by affidavit or on the record, any party to a proceeding may move for judgment. This holds true whether it be a criminal or civil matter.
The test as to whether or not a criminal court Judge should issue a warrant is: Are the facts set forth (in the information and the supporting affidavit) sufficient, if proven, to show a reasonable ground of suspicion to support the proof that a crime was committed and that it is reasonable to presume that the named defendant committed that crime? (People v. Mezzatesta, 203 Misc. 253, supra; People v. Rescinti, 191 Misc. 719.) That test has been met. The validity of the issuance of the warrant on the information as presented must therefore be reconciled on the fact that it does indicate a crime had been committed and that it was then reasonable to presume this defendant committed that crime.
However, the issuance of a warrant does not affect the validity of the information either directly or indirectly. Although an information performs the function of an indictment it need not be framed with the same exactness as an indictment, just so long as it contains sufficient statements and allegations to inform the Magistrate that" the designated crime was committed. Section 148 of the Code of Criminal Procedure contemplates an information on one or more supporting depositions. ,But both can be combined to set forth facts sufficient to justify the issuance of a warrant without further testimony. (People v. Mezzatesta, supra.) Thus, we must conclude that the warrant of arrest was properly issued although this is no proof of the validity of the information, or the legality of the information, nor does *875 it constitute a waiver of the defects that might appear therein, either of law or fact.
Defendant is charged with the crime of violation of subdivision 5 of section 1898 of the Penal Law, insofar as is related to subdivision 4 of section 1897 of the same Law.
The defendant attacks the information on the ground that it fails to allege facts constituting a crime and is jurisdictionally defective. At first blush the information appears to be good since it states the source of the information supported partially on information and belief and has appended to it an an affidavit by a witness from whom that information emanated. However, it might be argued that the witness is an accessory to the alleged crime and is also guilty of a separate crime growing out of the same set of facts and is in pari delicto with this defendant, hence, his affidavit at this point is not worthy of belief and has no probative force. (Code Crim. Pro., § 399; People v. Smith, ,26 A D 2d 588.)
The information complained of reads as follows:
•State of New York, County of Orange, City of Port Jervis. •SS.: Be it Remembered that I, S. W. Catizone, a peace officer of the State of New York, to wit: An Investigator of the New York 'State Police, Executive Department, Division of State Police, attached to Troop K at Middletown, New York, now come before Elias Aronson, Acting City Judge of the City of Port Jervis, in the County of Orange, New York and give information under oath as follows: That one Theresa Marie Nieke on the 31st day of March, 1967, at the Sears & Roebuck •Store of the City of Port Jervis, County of Orange, New York, •at about 4:00 o’clock in the afternoon of said day, did commit the crime of disposing BB Gun in violation of Article 172, Section 1898, subdivision 5 of the Penal Law of the State of New York by wrongfully, unlawfully, willfully and knowingly dispose of a weapon specified in Article 172, Section 1897, (Subdivision 4 of the Penal Law to a person under the age of sixteen, to wit: Defendant did at above time and place sell a Sears & Roebuck slide action BB gun to George Joseph Mathisen, dob 4/6/53, age thirteen, of Cahoonzie, New York, for $11.98, while it is a misdemeanor to sell a BB gun to a person under the age of sixteen. This information is based upon information and belief, the basis for which being police investigation, oral ■statement of defendant and attached deposition of George Joseph Mathisen. Wherefore, your informant prays that the deposition of informant and George Joseph Mathison, witness, may be reduced to writing and duly subscribed, and that a *876 warrant issue for the arrest of said accused, and that he be dealt with pursuant to the provisions of the Code of Criminal Procedure.
The supporting affidavit of George Joseph Mathisen reads as follows:
State of New York, County of Orange, City of Port Jervis, SS.: I, George Joseph Mathisen, am 13 years old, born on April 6, 1953, and live at Eoute 42, Cahoonzie, New York. I am in the 6th grade at Port Jervis, New York Central School. I can read and write. On Wednesday last week at about 5:00 PM I was home and called Sears & Eoebuck in Port Jervis, New York and ordered a slide action BB gun. It sounded like a female that took my order. She said it should be here by Friday. On Friday, March 31, 1967, after school about 4:00 PM I walked from school and went into Sears & Eoebuck. I went into the store and a woman was at the Catalogue Department. She was about nineteen, brown hair, wore glasses and had on a green dress. I told her I came to pick up a BB gun and gave her my name. She looked up my name, went to the back of the store and came back with a box that had a slide action BB gun in it. In the catalogue it was only $10.97 but I had to pay $11.98. I paid the woman $11.98 and she gave me the gun. The woman that sold me the gun did not ask me how old I was or for any identification. The woman that I ordered the BB gun over the telephone didn’t ask my age. On Monday, April 3, 1967, two men from the NYSP Inv. Catizone and Inv. Cleary took me to Sears & Eoebuck in Port Jervis, New York with Det. Wagner from Port Jervis, New York PD. I pointed out the woman about 4:00 PM who sold me the BB gun and I was told that her name is Theresa Marie Nieke. I have read the above and I swear it is all true. I have been told that it is a serious crime to swear to something that isn’t true.
Section 1897 (subd. 4) of the Penal Law reads: “ 4. Any person under the age of sixteen years who has in his possession any of the weapons, instruments, appliances or substances specified in the first three subdivisions of this section, or any air-gun, spring-gun or other instrument or weapon in which the propelling force is a spring or air, or any gun, or any instrument or weapon in or upon which any loaded or blank cartridges may be used, or any loaded or blank cartridges or ammunition therefor, or any dangerous knife, shall be adjudged a juvenile delinquent.”
Section 1898 of the Penal Law reads: “ 5. Any person who disposes of any of the weapons, instruments, appliances or substances specified in subdivision four of the preceding section *877 to any other person under the age of sixteen years is guilty of a misdemeanor.” No exceptions or special circumstances are provided for.
Section 238 of the Conservation Law provides that minors between ages of 14 to 16 may be licensed to hunt with a long bow or gun if accompanied by parent or guardian over the age of 21 years of age.
Section 219 of the Conservation Law provides license may be issued to a minor between the ages of 14 and 16.
Defendant attacks the information by seven separate points in her memorandum. The first is that the information is jurisdictionally defective; the second is the constitutionality of the section; the third is clarity of the information; the fourth is repetitious of the first; the fifth alleges a denial of due process of law; the sixth argument is repetitious of the first, and the seventh is, in effect, that this defendant is not the proper party defendant.
Insofar as the defectiveness of the information, this court is inclined to believe that although extremely weak it is not sufficiently defective to deny the issuance of a warrant thereon. However, the supporting affidavit, because of the method on which it was obtained and the person by whom it was made and the relationship of that person to the crime charged, makes it insufficient to sustain the arrest of this defendant.
As to the constitutionality of subdivision 4 of section 1897, insofar as it relates to subdivision 5 of section 1898, this court is inclined to believe that it is unconstitutional and a nullity. The constitutionality of some subdivisions of sections 1897 and 1898 have been previously contested by various courts in this jurisdiction, but only insofar as individual subdivisions of those two sections are concerned. There appear to be no reported cases on the issues presented here or the subdivisions before us now so far as we can ascertain. The People rely primarily on the case of Sickles v. Montgomery Ward (6 Misc 2d 1000) to substantiate their contention. That case, however, differs from the instant one in that there the defendant principal was charged and there was a direct sale and delivery by the salesman of the defendant to the purchaser, and as stated so ably by the People in their brief “ the dangerous instrumentality, the sale of which was specifically prosecuted in the above case, was a BB air gun and ammunition for the same.”
Thus, if we take the People’s contention as gospel, we have here —
(1) a wrong party defendant, and
*878 (2) a defect in the information because of the .failure to specify the propelling force.
(3) Ammunition was not alleged in this information.
Subdivision 4 of section 1897 was amended by chapter 788 of the Laws of 1964, effective July 1, 1964, deleting therefrom the phrase ‘1 or any instrument or weapon commonly known as a toy pistol,” but that did not vitiate the defects in the statute, and as it now stands the section is still too vague to be operable, or to justify an arrest thereunder, especially in the light of sections 219 and 238 of the Conservation Law. Although the court is bound by the evidence before it, it also must take judicial notice of that which is happening in the area and the situs of its location, and of what is common knowledge to the public in general. The information states “ a Sears & Roebuck Slide Action BB,” but nowhere in the section does it mention a specific manufacturer or BB Grun, Also, the information before the court does not state spring or air. It is common knowledge that “ BB ” refers only to the calibration of the projectile; a BB from a projectile point of view is a pellet .18 of an inch in diameter. It refers only to the diameter (of the projectile) and not to the weight or material of its construction. Thus, it might be paper balled up, plastic, lead or even a cotton swab. Subdivision 4 specifically states 11 or any air-gun, spring-gun or other instrument or weapon in which the propelling force is a spring or air ”.
A visit by anyone to any toy or hardware shop will find guns and instruments operating by spring or air of all shapes, size and kinds, made of metal, plastic, wood, and in some instances, even cardboard, which will propel and eject water, rubber darts, suction cups, corks, plastics, ping-pong balls, staples, rivets and nails, and probably many other things; some are toys and some tools. Thus, if we interpret the section literally almost all of the children in the United States under the age of 16, who play at cowboys and Indians or cops and robbers with any of these toys must be deemed juvenile delinquents and the parents of these children who purchase these instruments and these little rubber dart guns and the like must also be deemed guilty of misdemeanors. We are aware that this was not the intention of the Legislature but because of the vagueness of the section and because all people are entitled to equal rights under the law, we cannot charge one and not all. And criminal law statutes must be strictly construed in favor of defendants. Add this to the fact that the statute, section 1896 of the Penal Law, defines the articles the sale of which constitutes the violation of subdivision 5 of section 1898 and subdivision 4 of section 1897.
*879 “ § 1896. Definitions. * * *
“ 3. ‘Firearm,’ any pistol, revolver, sawed-off shotgun or other firearm of a size which may be concealed upon the person.” (Italics supplied.)
The instrumentality upon which this information was predicated was not readily concealable on the person — it was a shoulder arm — in shape, what is commonly known as a rifle, and approximately forty inches in length.
Also, therein is defined by subdivision 6, ‘ ‘ Dispose of ’ ’:—
“ 6. ‘ Dispose of,’ to dispose of, give, give away, lease, loan, keep for sale, offer, offer for sale, sell, transfer and otherwise dispose of.”
The first and last definition is a redundancy. As to the other definitions, this defendant was guilty of none of these acts, so far as the court could determine from the normal everyday use of those terms.
Another of defendant’s points raised is the moot question of the interpretation of the word ‘ ‘ sold ” as • indicated in the information. The affidavit of the witness which is appended to the information and in support of the information states that the infant telephoned Sears & Boebuck and ordered a slide-action BB gun, and that what sounded like a female voice took that order over the telephone. The affidavit did not identify the voice or person.
It must be here stated that the Sears & Boebuck referred to in this instance is a mail-order firm which has a number of mail-order clerks and at least two telephone-order offices in the City of Port Jervis, but no store where merchandise is stocked or purchased for immediate delivery and take-home.
The supporting affidavit states, in effect, that two days after the order was taken the affiant called at the mail-order store, took delivery of the BB gun, which was catalogue-priced at $10.97, and paid $11.98 therefor. That extra money paid over the catalogue price apparently constituted the delivery charge and New York State sales tax.
Defendant raises the question of title and time of transfer of title. This defendant was a stock clerk substituting for an ill and absent counter clerk at the date and time of the alleged crime. The usual method of Sears & Boebuck doing business was: purchasers would order from the catalogue via the telephone, by mail, or personal visit to the store, through an order clerk, who would thereafter forward that order to a Sears & Boebuck dispatching center. From there they ship the article to the store through a common carrier. The purchaser then would be notified, appear at the catalogue store, be told what *880 the cost of the article was, together with the shipping price, the taxes if any, and upon receipt of that sum a clerk would deliver the purchased article to the buyer.
It is academic that title to the instrumentality upon which this complaint is based from the seller to the purchaser passed at the instant that it was packaged by the Sears & Roebuck store at its terminal and placed in transit to be delivered to the purchaser. At no time was this defendant a party to this sale; she did not have title; she did not sell it; she made no personal gain by the transaction. She was merely a stock clerk. She was in the nature of a messenger being given a package to be delivered upon the collection or receipt of the cost due to a principal. The instrumentality was in a sealed carton. We question, had the article been purchased via mail and shipped parcel post — would the mailman, or post office, be likewise chargeable under these statutes? The relationship between this defendant and the employer was not even that of principal and agent. She could not bind the principal, nor the purchaser. There is no proof that she took the order or that she relayed the order or was in any way connected with the alleged sale. On the contrary, it appears, from the evidence before the court, that she was not in any way connected with the sale.
It is the court’s opinion, therefore, that the information is defective in that it specifies a particular Sears & Roebuck slide-action BB gun, but does not indicate it coming within the purview of the statute, either by description, definition, size or design. The information alleges the sale by this defendant, but neither it nor the supporting affidavit sustains a sale. Nothing in the statute indicates that it is a misdemeanor to sell a “ BB Gun ”, which statement is specifically omitted from the section, and lastly, it states that the grounds of the information and belief is gleaned from an affidavit of an individual who at best-must be considered an accessory in pari delicto with and a co-defendant of this defendant.
We, therefore, conclude that there is no basis in law or fact to sustain the information, that it is jurisdictionally defective, that subdivision 4 of section 1897 and subdivision 5 of section 1898 of the Penal Law, insofar as they are related to each other and defined in subdivisions 3 and 6 of section 1896, are unconstitutional.
Motion to dismiss the information is granted, defendant’s parole custody is vacated and she is released.