THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ROBERT BRYANT, Appellant.

First Department, May 16, 1972.

*Otto F. Fusco* for appellant.

*Daniel J. Sullivan* of counsel (*Burton B. Roberts, District Attorney*), for respondent.

CAPOZZOLI, J.   It is true that it was improper for the prosecutor to examine the identification witness as to his earlier action in the station house when he is alleged to have identified the defendant's picture. It cannot be defended on the theory that the subject was introduced by defendant's counsel. The answer given by the witness to the question as to how long he stayed at the station house, " around nine o'clock because I was looking at the pictures ", did not in any way indicate that he had identified a picture of the defendant. This was brought out by the prosecutor. It was also improper for the prosecutor

to elicit testimony from the police officer that the witness identified defendant's photograph.

However, none of this compels a reversal. The effect of errors of this type was very recently considered by the Court of Appeals in *People* v. *Carter* (30 N Y 2d 279, 282–283) and it said: " The fact that a pretrial identification procedure is impermissible does not in and of itself mandate a reversal. Certainly, it does not, if the record establishes that the in-court identification had an independent source or origin. (See *United States* v. *Wade*, 388 U. S. 218, 240–242; *People* v. *Brown*, 20 N Y 2d 238, 242–243; *People* v. *Ballott*, 20 N Y 2d 600, 605 *et seq.*) "

In the case at bar it is crystal clear that the in-court identification was in no way based upon observations incidental to the viewing of the defendant's photograph in the station house. The identifying witness stated that he had known the defendant before the crime, having seen him on a daily basis in their neighborhood for nearly two years prior. Therefore, the conclusion is inescapable that the in-court identification had an independent source and was in no way tainted by the improper testimony adduced.

In any event, it must be noted that there was no objection to the testimony adduced by the prosecutor and it is settled law that any error committed at that time is not saved for review on appeal in the absence of an objection. In another recent case, *Matter of Gonzalez* v. *State Liq. Auth.* (30 N Y 2d 108, 112) the Court of Appeals stated: " no specific objection was taken on constitutional grounds to the introduction of the allegedly illegally obtained evidence. The rule is, that in order to preserve on appeal ' The constitutional and legal issue on admissibility of evidence ', a specific objection on constitutional and legal grounds must be made during the trial or hearing. (*Matter of Leogrande* v. *State Liq. Auth.*, 19 N Y 2d 418, 425; *People* v. *Gates*, 24 N Y 2d 666, 670.) Where, as here, no specific objection on constitutional grounds to the receipt of the subsequently suppressed evidence was made during the hearing, the issue of admissibility of evidence is not available on judicial review."

Insofar as the identification of the defendant by the witness is concerned, it was direct and positive. The witness saw the defendant, before the homicide, on the second floor of the premises where the hold-up took place and saw him again as he came out of the building into the street, with the deceased after him. There is ample in the record to sustain the verdict

of the jury and the judgment should be sustained. (See *People* v. *Milburn*, 26 A D 2d 420, affd. 19 N Y 2d 910.)

The judgment of conviction should be affirmed.

MURPHY, J. (dissenting). We disagree. The principal prosecution witness, Armando Carrasquillo, was a 14-year-old boy who testified that he saw defendant running out of the building where the fatal assault occurred, holding a gun. Although he positively identified defendant as the man he had seen fleeing the scene of the crime, the witness admitted that it was then " getting dark " and that " you couldn't see nothing ". Since the critical question in this case involves the identification of defendant, we believe the testimony introduced at the trial regarding this witness' pretrial identification of the defendant through a photograph at the police station requires a reversal of the conviction in the interests of justice. (*People* v. *Christman*, 23 N Y 2d 429; *People* v. *Cioffi*, 1 N Y 2d 70.)

The Court of Appeals in *People* v. *Cioffi* (*supra*, p. 73) held that section 393-b of the Code of Criminal Procedure permits " a witness to testify to a previous identification by himself * * * it does not allow someone else—as, for example, a detective—to testify to a declaration of identification by another as evidence of guilt of a particular defendant (*People* v. *Trowbridge*, 305 N. Y. 471). Moreover, these other children and the detective were allowed to testify to the previous identification of defendant by this witness by means of photographs. Appellant himself was not present at the police station. Testimony to prior identification from pictures has been held not to be admissible under section 393-b (*People* v. *Hagedorny*, 272 App. Div. 830)." Although here the testimony was originally introduced through an unresponsive and volunteered answer of the witness, it was pursued by the prosecutor on redirect examination; and there appears to be no basis for the contention that such testimony was injected as part of any defense strategy. (Cf. *People* v. *De Renzzio*, 19 N Y 2d 45.) The question did not seek the answer given since the reference to the pictures occurred in this exchange between the young witness and the defense counsel, " and about how long did you stay there ", to which he replied, " Around 9 o'clock because I was looking at the pictures." Then the prosecutor said: " What was that? I didn't hear that." The answer was repeated and then the prosecutor on redirect examination, and on more than one occasion, asked the witness if the detectives showed him any pictures. He said that they had and that he had picked out a picture. To the prosecutor's question " And then was there

a lineup here in this building?", he responded in the affirmative. The prosecutor further elicited that the witness picked the defendant out of a picture of a lineup which was shown to him at the station house and at that time he also observed the defendant in a lineup. Moreover, this error was further aggravated on direct examination of police detective Byrnes when the prosecutor elicited from him that the witness Carrasquillo had identified the defendant from the afore-mentioned photograph of the lineup. (Code Crim. Pro., § 393-b; *People* v. *Trowbridge*, 305 N. Y. 471; *People* v. *Cioffi*, *supra*.) While the majority notes the absence of any objection to the testimony adduced by the prosecution, such absence does not preclude us from reversing the conviction and ordering a new trial in the interests of justice. (CPL 470.15; *People* v. *De Renzzio*, 25 A D 2d 652, affd. 19 N Y 2d 45.)

Although we believe the foregoing is sufficient to require a reversal of defendant's conviction, we deem it appropriate to comment on another aspect of the trial. Defendant testified in his own behalf and referred to his having been questioned about, and identified by, a Ronald Jones, in connection with a prior shooting. On cross-examination, defendant denied shooting Jones; whereupon the prosecutor requested, and received, a " charge " that the prosecutor was bound by such answer, as a matter of law and could neither rebut it, nor disprove it through other witnesses.

In its formal charge to the jury, the trial court expanded on this point by stating that the cross-examiner "may not refute either by further examination or by additional witnesses in rebuttal the answer of the witness in order to attack his credibility." While we note the absence of any appropriate exception thereto, the charge was clearly prejudicial.

Accordingly, the judgment should be reversed and a new trial ordered.

STEVENS, P. J., and McNALLY, J., concur with CAPOZZOLI, J.; MURPHY, J., dissents in an opinion in which NUNEZ, J., concurs.

Judgment, Supreme Court, Bronx County, rendered on April 2, 1971, affirmed.