OPINION OF THE COURT
Donald J. Mark, J.
The defendant is charged with burglary, third degree, and grand larceny, third degree. He has made an application pursuant to CPL 710.20 (subd 1) to suppress evidence upon the ground that it was illegally seized, and CPL 710.20 (subd 5) to suppress identification testimony upon the ground it was the result of an illegal photographic array.
*139 The issue of the alleged illegal search will be considered first.
On January 18, 1980, at 6:30 A.M., the Rochester police forcibly entered premises at 41 Evergreen Street, Rochester, New York, to execute a bench warrant for Julio Santiago. The house was rented by Nancy Torrez. Peter Torrez, Ms. Torrez’ brother, had previously informed the police that Mr. Santiago resided at that address, that the defendant stayed there at times, that both had been involved in burglaries at which guns were stolen, that some guns were stored on the premises and that two women and one child also resided there.
Investigator Leo Maring of the New York State Police had investigated a burglary in which the defendant was the suspect. Investigator Maring accompanied the Rochester police for the avowed purpose of arresting the defendant if he were there. No arrest warrant was sought for the defendant’s arrest. Upon gaining entry the Rochester police apprehended Mr. Santiago, Mr. Torrez and the defendant. The police were then instructed to search for weapons, and Investigator Maring visually inspected the open closet in the room where the defendant was arrested. He observed property which had been described to him as that stolen at the time of the burglary, and this formed the basis for the subsequent issuance of a search warrant.
At the time of his arrest the defendant was on parole status. The defendant was obliged to advise his parole officer of his address and of any change. On November 19, 1979 the defendant told his parole officer he was moving from the YMCA to 41 Evergreen Street, but on December 10, 1979 he notified his parole officer his address was 3349 West Ridge Road, Greece, New York. The defendant listed this same address in an office report to his parole officer on January 17, 1980. When arrested the defendant gave his address as 41 Evergreen Street. The defendant testified he had lived at that address since December 22, 1979, and that 3349 West Ridge Road had been a temporary address.
Relying upon Payton v New York (445 US 573) decided by the United States Supreme Court on April 15, 1980, the defendant claims that his warrantless nonexigent *140 arrest at his “home” was unconstitutional, and that the search warrant issued thereafter was based upon property observed as a result of such illegal arrest. The People contradict the defendant’s claim that he was arrested at his “home”. They further allege that the police were lawfully at the premises to arrest Mr. Santiago with a bench warrant, so the defendant for whom there was probable cause to arrest could be arrested without a warrant. They then argue that a legitimate search for weapons resulted in the observation which ultimately produced the search warrant.
There is no dispute that 41 Evergreen Street was rented by Nancy Torrez, and that Julio Santiago resided there. There is likewise no dispute that the police had probable cause to arrest the defendant for a felony. It is found that the defendant’s residence was 3349 West Ridge Road, but that he resided at 41 Evergreen Street on a temporary basis.
Initially, it should be noted that based upon prior decisions of the United States Supreme Court (e.g., United States v Peltier, 422 US 531; William v United States, 401 US 646), and the Court of Appeals (e.g., People v Morales, 37 NY2d 262; People v Buia, 34 NY2d 529), two trial courts have refused to give retroactive application to Payton v New York (445 US 573, supra; People v Beckford, 102 Misc 2d 963; People v Coles, 104 Misc 2d 333). However, a consideration of this point is not essential to this opinion.
The defendant makes the claim that he was arrested in his “home”, and therefore Payton v New York (supra), necessitated a warrant for his arrest. This issue of residence was resolved against him. The defendant further claims with some logic that even if he were a temporary resident at Ms. Torrez’ home, Payton v New York (supra) required a search warrant to enable the police to forcibly enter the latter’s home to arrest him. Some courts have required only an arrest warrant prior to entry to arrest in a third person’s home (United States v Harper, 550 F2d 610, cert den 434 US 837; United States v James, 528 F2d 999, cert den sub nom. Austin v United States, 429 US 959; United States v Brown, 467 F2d 419), while other courts have held that the police can enter a third party’s *141 home to arrest a suspect if they have an arrest warrant and also have probable cause that the suspect is within (United States v Cravero, 545 F2d 406, cert den sub nom. Miller v United States, 429 US 1100; Rice v Wolff, 513 F2d 1280, revd on other grounds sub nom. Stone v Powell, 428 US 465; Lankford v Gelston, 364 F2d 197), but there is authority that the Fourth Amendment requires a search warrant to enter a third party’s home (Government of Virgin Is. v Gereau, 502 F2d 914, cert den 420 US 909; Fisher v Voltz, 496 F2d 333; Huotari v Vanderport, 380 F Supp 645 [dictum]).
The reasoning behind the requirement that a search warrant rather than an arrest warrant is necessary to arrest a suspect on premises occupied by a third party is that the former would protect both the suspect’s interest in his freedom and the third party’s interest in the privacy of his premises (1078 U Ill L Forum 655, 673, 676). While this question is left unanswered by Payton v New York (445 US 573, 583, supra), this language by the Supreme Court may be indicative: “Nor do these cases raise any question concerning the authority of the police, without either a search or arrest warrant, to enter a third party’s home to arrest a suspect” (emphasis added).
However, the validity of the search in this case does not depend upon the police compliance with Payton v New York (supra), in effecting the arrest of the defendant; rather it depends upon the police compliance with that decision in effecting the arrest of Mr. Santiago.
Although Ms. Torrez rented 41 Evergreen Street, there was no evidence that Mr. Santiago was other than a permanent resident there. So, the police executed the bench warrant at Mr. Santiago’s “home”. A bench warrant is tantamount to an arrest warrant. The definition of arrest warrant (CPL 1.20, subd 28) is quite similar to the definition of bench warrant (CPL 1.20, subd 30). The purpose of an arrest warrant is to bring the defendant before the court (People v Nieke, 53 Misc 2d 872, rev on other grounds 56 Misc 2d 363); a bench warrant is obviously designated to accomplish the same purpose. A warrant of arrest must be based on probable cause (Matter of Butts v Justices of Ct. *142 of Special Sessions for Town of Greenburgh, 65 Misc 2d 536), just as a bench warrant gives the police probable cause to arrest (People v Gandio, 95 Misc 2d 47).
The opinion in Payton v New York (445 US 573, 603, supra) stated that an arrest warrant “implicitly carries with it” the authority to enter a suspect’s dwelling “when there is reason to believe the suspect is within.” In fact, United States v Reed (572 F2d 412), decided before and cited with approval in Payton v New York, supra), held that the police were required to secure an arrest warrant with a Magistrate’s further determination that the suspect was in his home in such a situation (see, also, United States v Cravero, 545 F2d 406, supra; Rice v Wolff, 513 F2d 1280, supra; Stone v Powell, 428 US 465, supra; Lankford v Gelston, 364 F2d 197, supra). So the police here must apparently be able to show that they had reason to believe that Mr. Santiago was on the premises at the time they executed the bench warrant. If this be a requirement of this new constitutional pronouncement, there was compliance in this case via the information the police received from Mr. Torrez as to Mr. Santiago’s residence at 41 Evergreen Street and the fact that the police entered at 6:30 a.m., a time when it would be expected the suspect was sleeping.
Thus, Mr. Santiago was validly arrested on the bench warrant and the requirement of Payton v New York (supra) was satisfied by the same.
The defendant complains that the forcible entry into the premises without notice to effect the arrest of Mr. Santiago was illegal. However, the police had received reliable information from Mr. Torrez, a resident of the premises, that stolen guns were stored on the premises and that women and children resided therein. The police could reasonably have concluded that the lives of the police officers and the women and children were endangered because of the presence of the weapons, and under those circumstances both case law and statutory law justified this manner of entry (Ker v California, 374 US 23; United States v Scott, 520 F2d 697; People v Floyd, 26 NY2d 558; People v *143 Graham, 69 AD2d 544; People v Wojciechowski, 31 AD2d 658; CPL 120.80, subd 4, par [b]).
This aspect of the arrest of Mr. Santiago also furnishes no solace to the defendant.
The police were validly on the premises at 41 Evergreen Street to arrest Mr. Santiago (Payton v New York, 445 US 573, supra), and the police had probable cause to arrest the defendant (Dunaway v New York, 442 US 200; People v Oden, 36 NY2d 382). The warrantless arrest of a person is a species of seizure required by the Fourth Amendment to be reasonable (Beck v Ohio, 379 US 89), and the arrest of a person is quintessentially a seizure (United States v Watson, 423 US 411). Under the circumstances the police could seize the defendant who was in plain view (Coolidge v New Hampshire, 403 US 443; see, also, United States v Arboleda, 633 F2d 985, decided by the United States Court of Appeals for the Second Circuit, on June 9, 1980, which is apparently in agreement). Even if the motive behind the arrest of Mr. Santiago" were the arrest of the defendant, this would not make the arrest of the defendant illegal (see United States v Seay, 432 F2d 395, cert den sub nom. McGee v United States, 401 US 942; United States v McCambridge, 551 F2d 865).
Since the police had legally arrested both Mr. Santiago and the defendant, two theories would then justify the view of the closet by Investigator Maring.
The police had received reliable information from Mr. Torrez that stolen guns were stored on the premises, that Mr. Santiago resided on the premises and that the defendant sometimes stayed there. Their information was vague as to the other occupants of the house. The police were entitled to make a protective sweep throughout the building to make certain that there were no weapons available to anyone not in custody and that there were no other persons present, who posed a threat to the officers (Terry v Ohio, 392 US 1; United States v Blake, 484 F2d 50; United States v Looney, 481 F2d 31). Chimel v California (395 US 752) should not be construed as absolutely prohibiting searches beyond the area of the arrestee’s reach (People v Floyd, 26 NY2d 558, supra), for the officers have *144 a right to assure their safety and they may look elsewhere on the premises to guard against the chance that third parties may offer resistance (United States v Broomfield, 336 F Supp 179).
When Investigator Haring arrived in the room where the defendant had been arrested, the defendant was still in the room handcuffed. This fact situation is quite similar to that in People v Fitzpatrick (32 NY2d 499) where the Court of Appeals held that the police could search a closet after the defendant had been removed from the same and handcuffed. Responding to that defendant’s argument that the search was in violation of Chimel v California (395 US 752, supra) that court stated (p 508): “The court did not disapprove of a search of the ‘room’ or area where the ‘arrest occurs’ (p. 763); it condemned only a search ‘remote in time or place from the arrest’, (p. 764) * * * And the fact that the police had handcuffed the defendant did not render the closet search unauthorized.”
Upon either theory the observation of the closet by Investigator Haring was not an unauthorized one. Because there had been a valid prior intrusion, the discovery of the stolen items was inadvertent and it was immediately apparent to the investigator that there was stolen property before him, the evidence was in plain view and could have been seized without a search warrant (Coolidge v New Hampshire, 403 US 443, supra). The application for the search warrant by Investigator Haring subsequent to this discovery provided additional protection to the defendant which was not constitutionally required.
Therefore, the application of the defendant to suppress the evidence upon the ground that it was illegally seized is denied.
The second issue raised by the defendant is that his identification by witnesses was the result of an illegal photographic array.
On four different occasions Investigator Haring exhibited a folder containing the photographs of six individuals to four witnesses. Only the faces of the six individuals were visible, and there was no way their heights, weights or *145 ages could be determined by the witnesses. The coloration of the skin and the color of the hair of all six individuals was the same, and all appeared to be in the same age category. Three of the individuals had curly hair, and two had wavy hair; the defendant had the shortest and the straightest hair.
Each of the four witnesses was asked by Investigator Haring to view the folder to ascertain if the folder contained the photograph of the individual he had seen at the scene of the burglary. Investigator Haring said nothing else to the witnesses during this identification procedure. Each witness selected the photograph of the defendant.
The defendant contends that his hair style was such that he was easily identifiable as the suspect.
Both the Federal and State cases hold that each case must be decided on its own facts and a photographic identification procedure will be violative of the defendant’s constitutional rights only if it was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification (Simmons v United States, 390 US 377; People v Hinds, 40 AD2d 786; People v Bryant, 39 AD2d 80, affd 31 NY2d 744). In this regard the courts should consider the number of photographs displayed for identification (United States ex rel. Gonzalez v Zelker, 477 F2d 797), if the photographs were of the same nature and size and unmarked (United States v Magnotti, 454 F2d 1140) and if all the persons displayed in the photographs were of the same approximate height, age and skin coloration (United States v Kimbrough, 481 F2d 421; People v Hinds, supra).
The photographic array in People v Fox (65 AD2d 880) was similar to that employed in this case. There the photographs were of seven black individuals with mustaches and similar hair styles, and each picture was a full view of the face and shoulders. The photographs were substantially similar to each other, although six photographs were Polaroid-type, and the defendant’s was not and there were several other variations. The witnesses were not told anything about the progress of the investigation or that anyone else had identified the defendant. It was held that this photographic identification procedure was not impermissibly *146 suggestive and the identification testimony by the witnesses was not suppressed.
There has been full compliance with all the constitutionally required safeguards surrounding the photographic identification procedure utilized in this case according to all the applicable case law.
Therefore, the application of the defendant to suppress the identification testimony upon the ground that it was the result of an illegal photographic array is denied.