## 19638

The STATE, Respondent, v. Ervin G. CUTTER and Fred Cutter, Appellants

(199 S. E. (2d) 61)

*Messrs. Robert G. Knight,* and *Hyman, Morgan, Brown* *& Blalock,* of Florence, *for Appellants,* cite:

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *John P. Wilson, Asst. Atty. Gen.,* of Columbia, and *T. Kenneth Summerford, Sol.,* of Florence, *for Respondent,* cite:

June 18, 1973.

BRAILSFORD, Justice:

The appellants, Ervin G. Cutter and Fred Cutter, are father and son. In April, 1972, they were convicted of having extorted money from one Kenneth Lawrence, a Florence physician, in violation of Section 16-566.1, Code of 1962. They were sentenced to imprisonment for ten years and have appealed on numerous exceptions, which have been argued under eight questions.

Dr. Lawrence had a lucrative medical practice, but he was continually in financial straits after a federal tax lien was filed against him in the early sixties. When he could no longer obtain credit from conventional sources, an extraordinary relationship began between the doctor and the elder Cutter, a railway employee, in which the latter soon was joined by his son. The Cutters, whose own wealth is not disclosed by the record, from time to time obtained funds in substantial amounts from banks, loan companies and other sources for the doctor's use in meeting his obligations and in making investments, from which, inferably, they expected to share profits. The Cutters made weekly collections from the doctor, in progressively larger amounts, for which, apparently, no accounting was made. According to the State's case, they dominated and intimidated him by dire threats of violence, accompanied by display of weapons, and by these means enforced their weekly collections of cash and obtained notes and checks for large sums of money from him. The details of this evidence need not be recited for its sufficiency to sustain the convictions is not challenged. According to the State's testimony, by March of 1972, when

Dr. Lawrence finally resolved to appeal for help to legal authorities, the defendants had installed a woman in his office as his business manager and through her had taken over his very considerable receipts and disbursements.

The appellants were convicted and sentenced on Thursday, April 27, 1972. Thereupon, Mr. Knight, who had withdrawn as counsel during the trial when it appeared that he would be a witness for the defense, gave notice of intention to appeal and moved that bail be set. Mr. Keels, who was associated with Mr. Knight as trial counsel and who continued in this capacity after Mr. Knight's withdrawal, announced that he would not participate in the appeal. On the same day, court was adjourned *sine die,* and the presiding judge left the circuit. On the following Tuesday, May 2, Mr. Hyman, whose firm and Mr. Knight are counsel for appellants here, called the judge at his home and requested that he hear a motion for a new trial, to which the judge agreed. Such a motion was reduced to writing and served on the State on June 15. The motion was argued on June 21. The judge quite properly concluded that he had no jurisdiction to entertain the motion and dismissed it on this ground. However, he commented at some length on the grounds of the motion.

The first, fifth and seventh questions on this appeal have no support in the record except in these gratuitous remarks of the trial judge concerning a matter of which he had no jurisdiction. Even according to the statements in this order all of the weight to which they would be entitled if the judge had had jurisdiction of the case when it was issued, we find no error as assigned by these exceptions, certainly none to the prejudice of the appellants.

When it appeared that Mr. Knight, of trial counsel for appellants, was witness to the execution of a material document which Dr. Lawrence testified he had been forced to sign at gunpoint, the trial judge, in effect, required him to withdraw as counsel so that he might ap-

pear as a witness. By their second question the appellants urge that they were denied their right to a fair trial "by the Court's failure to adequately explain to the jury the reason for counsel's withdrawal from the case." We are satisfied that the court's statement to the jury concerning this matter was entirely adequate, and that appellants' concern that the jury may have received the impression that they were being abandoned by counsel is without reasonable foundation. The further argument that it was improper to require counsel to withdraw, to the prejudice of appellants' right to the effective assistance of counsel, is not raised by the sole exception on this point, which is of the tenor indicated above.

A switchboard operator at McLeod's Infirmary was examined and cross examined at some length about a telephone conversation which she overheard between Dr. Lawrence and the younger Cutter. She testified that Cutter's speech was vulgar and profane, and that he threatened Dr. Lawrence in a highly menacing fashion. At the conclusion of the re-direct examination of the witness, the court asked one question, "Did he ask him for any money?", to which the witness replied, "Yes, sir." As their third question, the appellants argue that they were prejudiced in their right to a fair trial by the "Court's questioning of (this) witness concerning a crucial element of the alleged offense of blackmail." We find no merit. *State v. Anderson,* 85 S. C. 229, 67 S. E. 237 (1910); *State v. Chasteen,* 228 S. C. 88, 88 S. E. (2d) 880 (1955).

Appellants' fourth question complains of error in allowing the switchboard operator to testify to the telephone conversation which she overheard between the younger appellant and Dr. Lawrence. The error assigned by the exception going to this point is "that the unauthorized interception of the message constituted an unlawful invasion of privacy and was unlawful search and seizure in violation of the Fourth Amendment of the United States Constitution and Article I, Section 16 of the South Caro-

lina Constitution." The error urged in the brief is that the interception of the conversation by the witness was in violation of Title 18, U. S. C. A., Sec. 2511, known as the federal anti-wiretap law. This question is not properly before us because no objection was raised to the operator's testimony at the trial on any ground, and because the statute relied upon in argument is not invoked by any exception on this appeal.

Question five relates to the claimed ineffectiveness of appellants' trial counsel. As phrased, the question is confined to matters which appear only in the order dismissing appellants' motion for a new trial. However, several other matters are argued in this division of the brief as reflecting on counsel's effectiveness, including his failure to object to the testimony of the operator. We comment briefly on this claim.

The operator testified that when she got Dr. Lawrence on the line in response to the appellant's call, she was getting ready to turn the key when she heard a voice say, " 'I am going to kill you tonight,' and then a roll of profanity behind it." It was only after her attention was thus attracted that the operator thought to listen to the conversation. It was certainly no reflection on the ability or zeal of trial counsel that he failed to object to this testimony upon the ground now suggested. If the conduct of the operator under these circumstances was indeed in violation of federal law, we question that there are many members of the trial bar or bench of this State to whom the point would have occurred. It apparently did not occur to able counsel for appellants until after the exceptions had been drafted and the case for appeal agreed upon.

In conclusion on this point, we are satisfied from our consideration of the entire record that able and experienced trial counsel was alert, vigorous and intelligent in conducting appellants' defense, and that they did in fact have the benefit of the effective assistance of counsel.

Under question six, appellants urge that the court should have declared a mistrial or properly admonished the jury when the solicitor suggested by an inflammatory and prejudicial question that a witness was afraid of them. The question, which they take completely out of context, was, "Are you afraid?" When read in context, it is immediately apparent that the inquiry was as to whether the female witness was nervous in her first appearance on the stand. The jury could not have understood otherwise.

The appellants do not seriously argue the claim made under question eight that the court erred in dismissing their motion for a new trial for lack of jurisdiction. Instead, they ask that the court "invoke the common law principle of *coram nobis.*" The case is before us in the exercise of our appellate jurisdiction only and that jurisdiction in criminal cases is limited to the correction of errors of law. While the bizarre story which this record unfolds warranted close scrutiny of the evidence by the members of the jury before reaching their verdict, we find no error entitling defendants to a new trial.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.