■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARTHUR BROWN, Appellant.—Judgment, Supreme Court, New York County, rendered

August 15, 1974, convicting the defendant upon his plea of guilty of attempted criminal possession of a dangerous drug in the third degree, after a hearing denying defendant's motion to suppress physical evidence, unanimously reversed, on the law, the motion to suppress is granted, and the indictment dismissed. On the evening of April 14, 1973, a large number of Federal agents gathered to execute arrest warrants for 86 people who had been indicted for narcotics offenses two days earlier (the indictments remained sealed pending the arrest). Most of the warrants were accompanied by a folder which contained background information and a picture of the subject of the warrant. The subject of the warrant at issue here was one Wilton Cortez. No picture of Cortez was supplied. There was no background information other than he was a black male, residing at an address on 115th Street, Manhattan. The agents attempted to execute the warrant for Cortez at the 115th Street address but did not find him there. When they returned to central headquarters with the unexecuted Cortez arrest warrant, they were told by another agent that the name Wilton Cortez was similar to the name of one "Cortez Whealton" who the agents knew, from another investigation, to be residing at 80 McLellan Street and that the subject of the warrant and "Cortez Whealton" might be one and the same person. The agents proceeded to 80 McLellan Street in The Bronx and observed the name of C. Whealton on the mailbox for Apartment 6E. They went to this apartment, heard noise inside and attempted to gain access through a ruse by knocking on the door and telling the occupants that they were investigating a gas leak. The occupants did not open the door and responded that there was no gas leak in the premises. Next, the agents inquired of the superintendent if he had a key to the apartment and the "super" replied that the door was double locked and he did not have both keys. The agents learned from a maintenance man in the building that the occupant of Apartment 6E, C. Whealton, was a heavy-set black man about 30 years old. Two of the agents then set out to look for a uniformed officer and on the street they noticed two men leaning out of the window of Apartment 6E, one of whom appeared to be climbing down the fire escape. Drawing their guns, the agents directed that man to continue down the fire escape. After placing this man under arrest and questioning him, they were satisfied that he was not Wilton Cortez, the subject of the warrant. The agents then climbed up the fire escape, entered the apartment through the sixth floor window and found defendant herein, Arthur Brown, in the process of flushing narcotics down the toilet. Other contraband was found in plain view in the apartment, but the subject of the warrant, Wilton Cortez, was not in the apartment. CPL 120.80 (subd 4) provides that an officer executing an arrest warrant may: "In order to effect the arrest * * * *enter any premises in which he reasonably believes the defendant to be present.* Before such entry, he must give, or make reasonable effort to give, notice of his authority and purpose to an occupant thereof, unless there is reasonable cause to believe that the giving of such notice will: (a) Result in the defendant escaping or attempting to escape; or (b) Endanger the life or safety of the officer * * * (c) Result in the destruction, damaging or secretion of material evidence." (Emphasis supplied.) On this record it is clear that the agents lacked sufficient facts to "reasonably believe" that the subject of the warrant, Wilton Cortez, was at the McLellan Street apartment. Thus, their entry was unlawful, requiring the suppression of all evidence seized in the apartment. On the basis of the scanty information delineated above and without further investigation, the agents could not "reasonably believe" that Wilton Cortez could be found in Apartment 6E.

They only knew that the subject of the warrant was a black man and thus the additional information that the occupant of Apartment 6E was heavyset and 30, learned at that site, was of no moment and may not be considered as supportive of a "reasonable belief" that Cortez Whealton was, in fact, Wilton Cortez. Moreover, the similarity in the names and the fact that Cortez Whealton was known to one agent as involved with narcotics is insufficient to raise the level of belief that the subject of the warrant was the occupant of Apartment 6E from that of suspicion to one of reasonableness. Therefore, the execution of the warrant was improper under CPL 120.80 (subd 4). (See, also, *Rice v Wolff*, 388 F Supp 185, affd 513 F2d 1280, cert granted 422 US 1055.) Concur—Murphy, J. P., Lupiano, Silverman, Lane and Yesawich, JJ.