OPINION OF THE COURT
Maurice Brill, J.
Defendant Juan Alexis Cabral is charged with the crimes of *1001 criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the third degree, and criminal possession of a weapon in the third degree. He moves to suppress certain evidence (i.e., 17 plastic bags containing narcotics, a loaded .357 magnum pistol, $5,398 in United States currency, and a triple beam balance scale), which the People intend to introduce at his trial and which was seized from his apartment on March 27, 1989 without a search warrant. The People contend that the above-mentioned items should not be suppressed as evidence because they were discovered in open view during the execution of an arrest warrant for another individual thought to be residing in the subject premises. For the reasons hereinafter discussed, the court finds that the defendant’s motion should be granted.
Proper resolution of the opposing contentions requires a careful review of the specific facts and law applicable to arrest warrants and search warrants under present circumstances.
FINDINGS OF FACT
On September 7, 1988, an individual named Otoniel Torres was arrested on various narcotics-related felony charges. He informed the arresting officer that his address was 577 New Lots Avenue, apartment 4, and was thereafter processed through the criminal justice system. On the following day, September 8, 1988, Torres again informed an interviewer employed by the Criminal Justice Agency (CJA) that his address was the same as imparted to the arresting officer. He was released from custody soon thereafter for failure to indict him within the time limitations specified in CPL 180.80. On October 24, 1988, he failed to appear in Part N of this court and a bench warrant was issued in that Part on that date. Thereafter, based upon a voted indictment (No. 12128/88), and his failure to appear for arraignment on said charges, an arrest warrant was issued by the court on February 10, 1989. Torres never again appeared in court.
At the hearing held on defendant’s present motion, Police Officer Stephen Ahearn, shield No. 4590, a warrant investigator, testified that the Kings County Warrant Squad received the above-mentioned bench warrant on November 14, 1988, and the arrest warrant on March 15, 1989. The address received from Torres in September of 1988 had been taken from court papers and endorsed on both warrants as a ministerial task performed by a court clerk or police officer. With this information in hand, Police Officer Ahearn and another *1002 warrant officer took action in an effort to execute the arrest warrant on March 27,1989.[1]
At approximately 8:30 A.M. on March 27, 1989, Officer Ahearn gained access to the hallway of the apartment house known as 577 New Lots Avenue. He then opened the front door of the building to allow his partner, Police Officer Vincent Balestrieri, to enter. He did not see Torres’ name on the doorbells, did not check the mailboxes for Torres’ name, and did not speak with the building superintendent. Ahearn and his partner proceeded upstairs to apartment number 4. His badge was displayed from a string worn around his neck and he "may” have been carrying his firearm at his side. He did have in his possession a photograph of Otoniel Torres, the man whom he sought to arrest.
Ahearn knocked at the door of apartment number 4. After a wait of approximately two minutes, the door was opened by the defendant, Juan Alexis Cabral, who the officer realized was not the person he was seeking. At that point, the officers entered the apartment and began to search for Torres. Upon reaching the living room area beyond the entrance hallway, the aforementioned photograph of Torres was shown to defendant Cabral. Information was briefly sought regarding the whereabouts of Torres while the officers proceeded to the rear rooms of the apartment. However, it appeared that the defendant spoke no English, and Ahearn stated that he received no response that he could understand or recollect. There was no attempt to communicate further with the defendant.
Ahearn further testified that he continued his search into the rear bedroom. He discovered 17 plastic bags of a white, powdery substance, believed to be cocaine, under the bed. The *1003 bags were inside a brown paper bag that had been rolled down so that one could "see them peering over the brown bag” (i.e., protruding from the top).[2] On one of the two bedroom nightstands he discovered a handgun "in plain view.” In addition, the officer discovered $5,398 in United States currency which he saw in the nightstand drawers "that were open.” Finally, the officer discovered a triple beam balance scale on the floor of a living room closet which was in his "plain view” after he looked in the closet. The entire apartment was searched and the aforementioned items were seized. Defendant Cabral was placed under arrest and charged with the present crimes.
No trace of Otoniel Torres was found in the apartment. After the arrest of the defendant, a telephone bill was found by the officers on a bedroom bureau. The bill was in the name of the defendant, Juan Cabral, and the address listing was 577 New Lots Avenue. In addition, a key taken from the defendant Cabral’s person was found to fit the door to the apartment in question.
CONCLUSIONS OF LAW
As an introduction to the legal principles governing the case at bar, we must recognize that, while an arrest warrant and a search warrant both serve to subject the probable cause determination of the police to judicial review, the interests protected by the two warrants differ. An arrest warrant is issued by a Magistrate upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense — and thus that warrant primarily serves to protect an individual from an unreasonable seizure. A search warrant, in contrast, is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual’s interest in the privacy of his home and possessions against the unjustified intrusion of the police. (Steagald v United States, 451 US 204, 213 [1981]; cf., People v Atkinson, 116 Misc 2d 711, 714 [Sup Ct, Onondaga County 1982].)
In the present matter no claim is made by the People that a judicial officer found probable cause to believe that Otoniel Torres lived at 577 New Lots Avenue (apt. 4), and it is conceded that this address, which appeared on the warrants, was obtained from previous court papers and endorsed upon *1004 said warrants as a ministerial act. The People do contend, however, that despite the absence of a search warrant, the existence of the arrest warrant furnished the officers with sufficient authorization to enter the subject premises.[3] In support of their position, the People rely upon Payton v New York (445 US 573 [1980]) which held that an arrest warrant was necessary before police could enter a suspect’s house to make a routine felony arrest, absent exigent circumstances, even though there was unquestionable probable cause.
We must keep in mind that Payton (445 US 573, 603, supra) carefully limited police authority in this area by the following language: "Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within. ” (Emphasis supplied.)
It may be true that the law does not place upon the warrant officer the obligation of conducting a full-scale investigation to confirm the last known home address of a named subject before seeking that subject at that location. Indeed, that last known address might well represent the logical place to commence his inquiry. However, the officer’s decision to proceed to the location mentioned on the arrest warrant, standing alone, is dispositive neither of the issue of whose residence it is nor of the question of the suspect’s presence therein on the date of execution. Those questions require resolution before the threshold of the premises may be crossed.
Bearing in mind the specific limitations set down in Payton (supra), and upon close examination of CPL 120.80, the court has concluded that the People have failed to satisfy their initial burden of going forward to demonstrate the legality of the police conduct in the first instance. This conclusion is supported by three findings:
(1) The People have failed to prove that Otoniel Torres lived in apartment number 4 of 577 New Lots Avenue on March 27 1989, the date of execution of the arrest warrant.
It must be remembered that the arrest warrant, in its usual form, contained no probable cause finding of Torres’ address. *1005 What it did contain was the equivalent of a "last known address” gleaned from Torres’ alleged pedigree statements on court papers some 6V2 months prior to its execution. The court finds such evidence insufficient to prove the People’s argument that Torres lived at the same premises on the warrant’s execution date, and the same conclusion would probably be justified if only half of this period had elapsed. The fact that a suspect may have lived at a particular premises at some point in time does not legally transform those premises into his residence for a period of indefinite duration. Moreover, while all other evidence of Torres’ residence in these premises is lacking, we may not overlook the evidence discovered by Officer Ahearn in support of defendant’s claim of residence— the telephone bill for the premises bearing defendant’s name and defendant’s possession of a key which did fit the door lock of the subject apartment. It was the defendant who opened the apartment door at 8:30 in the morning (a time when a resident thereof would normally be expected to be at home) and no other person was present. The evidence adduced at the hearing thus indicates that it was the defendant Cabral, not Otoniel Torres, who lived within the subject premises on March 27,1989.
To the extent that the present arrest warrant has been invoked as authority to enter the home of defendant Juan Cabral, a third party, such procedure failed to comply with constitutional requirements. Execution of the search for Otoniel Torres in the home of Cabral required the officer to obtain a proper search warrant safeguarding defendant’s interest in the privacy of his home. (Steagald v United States, 451 US 204, supra.)[4]
A final observation must be made in connection with the *1006 instant finding. It is to be noted that the language of CPL 120.80 (4) provides that a police officer armed with an arrest warrant may "enter any premises in which he reasonably believes the defendant [suspect] to be present.”[5]
It would appear that such language, referring to "any premises”, fails to incorporate the constitutional limitations imposed by Steagald (supra), regarding the homes of third parties. To the extent that subdivision (4) of CPL 120.80 neglects to include such required limitations, the above-cited language is constitutionally invalid as it applies to the present case.[6]
(2) Assuming, arguendo, that Otoniel Torres actually lived in the subject premises on March 27, 1989, the People have nevertheless failed to prove that the warrant officers had a reasonable belief of Torres’ presence therein at the time the arrest warrant was executed.
The clear language of Payton (445 US 573, 603, supra) cited *1007 hereinabove leaves no room to conclude that proof of a suspect’s residence at a particular premises is sufficient to satisfy the requirement of "reason to believe the suspect is within.” That latter requirement must be met in order to satisfy Federal constitutional mandates as well as the State statutory standards which permit the officer’s entry if "he reasonably believes the defendant to be present.” (CPL 120.80 [4]; cf., People v Lewis, 94 AD2d 44, 49 [1st Dept 1983]; People v Brown, 56 AD2d 543, 544 [1st Dept 1977].)
There is no doubt that the warrant officers, with photograph of their suspect in hand, knew that defendant Cabral, who opened the door of apartment number 4 at 577 New Lots Avenue on March 27, 1988, was not the man they were seeking. Other than the arrest warrant endorsement of that address, originally provided by the suspect some 6V2 months prior, they had no additional information pointing to the presence therein of Otoniel Torres. Under such circumstances, proper authority to enter the premises for purposes of any search was lacking. A "reasonable belief’ that the suspect is present cannot be arrived at simply because that suspect may have lived at those premises some 6V2 months prior thereto.[7]
The various cases cited to support the contentions of both sides in this area are, of course, readily distinguishable on their particular facts. (See, People v Lewis, 94 AD2d 44, supra; People v Brown, 56 AD2d 543, supra; People v Atkinson, 116 Misc 2d 711, supra; People v Ocasio, 106 Misc 2d 138 [County Ct, Monroe County 1980], affd 120 AD2d 932 [4th Dept 1986]; United States v Terry, 702 F2d 299 [2d Cir 1983]; United States v Manley, 632 F2d 978 [2d Cir 1980]; Wanger v Bonner, 621 F2d 675 [5th Cir 1980]; People v Jacobs, 43 Cal 3d 472, 729 P2d 757 [1987]; People v Cagle, 21 Cal App 3d 57, 98 Cal Rptr 348 [1971]; State v Roepka, 217 Neb 139, 347 NW2d 857 [1984].) These cases have, nevertheless, been instructive as further reminders that physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. They teach that the law requires some modicum of concrete, believable information of recent vintage, pointing to the suspect’s presence at the time his home is searched. To accept a lesser standard would invite the arresting officer’s entry into the home at his own convenience so long as he *1008 holds the warrant. That alternative is legally and historically unacceptable.
(3) The People have failed to show that, before entry into the premises in question, the warrant officers gave, or made reasonable effort to give notice of their authority and purpose to the defendant occupant.
It is abundantly clear, from the testimony taken at the hearing, that prior to entering apartment 4 of 577 New Lots Avenue, the warrant officers made no attempt whatever to satisfy the statutory requirement of giving notice of their "purpose.” No attempt was made to advise the defendant of the purpose of their entry until they were well inside the apartment.[8] Furthermore, it is equally clear that there existed no exigent circumstances which might justify such noncompliance with the statutory requirement. (CPL 120.80 [4], [5].)
The failure to comply with proper notice requirements under present circumstances is not of minor significance. Such conduct runs contrary to the dictates of common law and clearly violates the above-cited provision of the Criminal Procedure Law. (CPL 120.80 [4].) Moreover, because the officers effected the entry and seizure by unlawful means, the evidence may not be used against this defendant. As in People v Floyd (26 NY2d 558 [1970]), this result is required as á consequence of the application of the search and seizure provision of the Federal Constitution to the States under the Fourteenth Amendment. (Cf., People v Frank, 35 NY2d 874, revg on dissenting opn 43 AD2d 691, 692-694 [2d Dept 1973]; People v Ferguson, 115 AD2d 333 [4th Dept 1985]; People v Mecca, 41 AD2d 897 [4th Dept 1973].)
Reviewing the findings of this court, the People have failed to prove (1) that the suspect named in the arrest warrant lived in the subject premises on the day of its execution; (2) that the warrant officers had a reasonable belief of the suspect’s presence therein at the time of execution; or (3) that the officers gave or made reasonable effort to give proper notice of *1009 their authority and purpose to the defendant occupant before entry into said premises. Possession by the officers of the present arrest warrant for Otoniel Torres did not provide sufficient authorization for the entry of the subject premises and seizure of the contraband therein. Despite general recognition that overly technical interpretations of warrant requirements are to be avoided, the prevailing right to be secure in one’s home from unjustified, forcible police intrusion continues to merit scrupulous protection. Defendant’s motion to suppress is granted in all respects.

. There was testimony elicited from Police Officer Ahearn which indicated that a postal check relating to the subject premises was conducted (apparently in Dec. of 1988). All documents relating to such check, along with all other relevant documents in the files of the warrant office, were destroyed one day before the commencement of the hearing in the instant matter, despite the fact that the office was alerted as to the significance of these files. Such action effectively prevented proper defense investigation and inquiry regarding relevant documents completed and steps taken to accomplish the alleged check. This court finds the actions of the warrant office in this matter to be inexcusable under present circumstances. The credibility of the testimony offered in connection with the alleged postal check or any results thereof is found to be open to question and deserving of a negative inference. In any event, the court’s final decision in the present matter would not have been altered by its acceptance of the aforesaid "postal check” testimony.

. The brown paper bag in question was not retained, vouchered, or produced in court by the officers.

. The same argument is apparently made by the People with regard to the bench warrant. In view of the similarity in nature, function and manner of execution of the two warrants (CPL 120.80, 530.70 [2]) reference to the qualities of the arrest warrant will apply equally to those of the bench warrant for purposes of the instant matter.

. The rationale of the Steagald court is clearly explained at 451 US 204, 214, n 7, as follows: "Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person’s privacy interest when it is necessary to arrest him in his home. This analysis, however, is plainly inapplicable when the police seek to use an arrest warrant as legal authority to enter the home of a third party to conduct a search. Such a warrant embodies no judicial determination whatsoever regarding the person whose home is to be searched. Because it does not authorize the police to deprive the third person of his liberty, it cannot embody any derivative authority to deprive this person of his interest in the privacy of his home. Such a deprivation must instead be based on an independent showing that a legitimate object of a search is located in the third party’s home. We have consistently held, however, that such a determination is the province of the magistrate, and not that of the police officer.”

. CPL 120.80 provides as follows:
"§ 120.80 Warrant of arrest; when and how executed
"1. A warrant of arrest may be executed on any day of the week and at any hour of the day or night.
"2. Unless encountering physical resistance, flight or other factors rendering normal procedure impractical, the arresting police officer or peace officer appointed by the state university must inform the defendant that a warrant for his arrest for the offense designated therein has been issued. Upon request of the defendant, the officer must show him the warrant if he has it in his possession. The officer need not have the warrant in his possession, and, if he has not, he must show it to the defendant upon request as soon after the arrest as possible.
"3. In order to effect the arrest, the police officer or peace officer appointed by the state university may use such physical force as is justifiable pursuant to section 35.30 of the penal law.
"4. In order to effect the arrest, the police officer or peace officer appointed by the state university may, under circumstances and in a manner prescribed in this subdivision, enter any premises in which he reasonably believes the defendant to be present. Before such entry, he must give, or make reasonable effort to give, notice of his authority and purpose to an occupant thereof, unless there is reasonable cause to believe that the giving of such notice will:
"(a) Result in the defendant escaping or attempting to escape; or
"(b) Endanger the life or safety of the officer or another person; or
"(c) Result in the destruction, damaging or secretion of material evidence.
"5. If the officer is authorized to enter premises without giving notice of his authority and purpose, or if after giving such notice he is not admitted, he may enter such premises, and by a breaking if necessary.”

. The same conclusion necessarily follows as to the language of CPL 530.70 (2), insofar as it provides for the execution of a bench warrant in the same manner as specified for an arrest warrant in CPL 120.80.

. The testimony of Officer Ahearn is herein noteworthy as to his own estimate of success in locating warrant subjects at their given places of residence. He testified that, employing such information, he has been unsuccessful in two thirds of his attempted arrest warrant executions.

. Additionally, at that late point in time, while they were moving toward the apartment’s rear rooms, the officers’ discovery that the defendant spoke and understood the Spanish language only did not provide instant absolution. No real effort at further communication seems to have been made. Any such communication would probably have revealed that Otoniel Torres was, indeed, not present in the premises at that time. Without more, a finding of "reasonable effort” to give notice of authority and purpose would appear to be legally erroneous, patently unfair and somewhat naive.