493 S.E.2d 349

**The STATE, Respondent,**

v.

**Willie James ASBURY, Appellant.**

**No. 24712.**

Supreme Court of South Carolina.

Heard Dec. 5, 1995.

Decided Nov. 10, 1997.

---

188

Assistant Appellate Defender Robert M. Dudek, of S.C. Office of Appellate Defense, Columbia, for appellant.

Attorney General T. Travis Medlock, Chief Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General Harold M. Coombs, Jr., Staff Attorney Charles F. Reid, Columbia; and Solicitor Thomas E. Pope, York, for respondent.

BURNETT, Justice:

The appellant, Willie James Asbury, appeals his convictions of murder and kidnaping.[1]  We affirm.

## FACTS

On January 1, 1992, Ezell Lawrence was found dead in his home.  His feet were bound and his hands were tied behind his back with electrical cord.  A shirt was tied around his neck and part of the shirt was forced into his mouth.  The cause of death was asphyxiation.  Asbury's fingerprints were found on the back-porch light bulb of Mr. Lawrence's residence.  The bulb had been unscrewed sufficiently so that it was inoperable.  The switch for the light was inside the residence.  Asbury resided near Mr. Lawrence and often visited at a residence adjacent to Mr. Lawrence's property.

On January 6, 1992, just after daybreak, deputy sheriffs of the York County Sheriff's Department went to Asbury's residence to serve him with commitment orders and arrest warrants unrelated to Mr. Lawrence's death.  Numerous previous attempts to effect service of the warrants had been unsuccessful.  In preparing for the arrest, the officers verified Asbury's address through driver's license records, the postal carrier and neighbors.  Additionally, they learned from neighbors that Asbury came home late at night and left early in the morning.  Testimony reveals the officers, with the arrest warrants and commitments in their possession, knocked on the door of Asbury's residence, announced themselves as police officers and called Asbury's name.  A light was seen inside, but no activity was noticed, and they received no response from within.  The officers entered Asbury's residence through an open kitchen window.

Asbury was not at home.  However, in searching for him, the officers observed in plain view an electric blanket with a male plug but from which the electrical cord had been removed.  The officers left the residence without removing any evidence.  On January 8th the officers procured a search warrant, returned to Asbury's residence and seized the elec-

---

1.  The trial judge granted a directed verdict in Asbury's favor on charges of armed robbery and burglary.

tric blanket. Another search warrant was secured on January 15th. Pursuant to this search warrant, numerous appliances from which electrical cords had been severed, partial electrical cords, and items which could be used to cut electrical cords, including several pairs of scissors, were seized from Asbury's residence.

The State's expert witness testified the male plug on the electric blanket had at one time been attached to the female plug on the electrical cord found tied around the victim's ankles. He further testified the electrical cords which bound the victim's hands and ankles had been cut by a pair of scissors found in Asbury's home.

## ISSUES

I. Did the trial court err in refusing to suppress evidence seized from Asbury's home?

II. Did the trial court err by overruling Asbury's motion to exclude reference to severed electrical cords and appliances which had been found in his home but which were not related to the crimes for which he was charged?

III. Did the trial court err by denying Asbury's motion for a directed verdict?

IV. Did the trial court err by denying Asbury's motion for a continuance?

## DISCUSSION

### I.

Asbury appeals alleging the trial court erred in refusing to suppress evidence seized from his home. Asbury argues the evidence seized was inadmissible because the police officers unlawfully entered his residence.

In *State v. Loftin,* 276 S.C. 48, 275 S.E.2d 575 (1981), this Court adopted the principle that a valid arrest warrant implicitly grants police the limited authority to enter a suspect's residence when there is reason to believe the suspect is within. *See Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The lawfulness of entry into a private residence by law enforcement officers rests solely upon the information possessed by the officers at the time entry is

effected. In *Loftin* the search was found to be unlawful because no one appeared to be at home, no one answered when the officers knocked on the door, and no sign of the defendant was perceived, despite an hour-and-a-half stakeout. Significantly, one officer, who was familiar with Loftin's blue van, testified the vehicle was not in the parking area of Loftin's apartment. Clearly, no basis existed for a reasonable belief Loftin was at home.

To the contrary, in *United States v. Lauter*, 57 F.3d 212 (2d Cir.1995), a federal court of appeals held officers had reason to believe the defendant was present in his apartment based upon information received from a "confidential informant" that the defendant had moved into the windowless apartment during the weekend, that he was unemployed, and that he typically slept late. Lauter was found asleep inside the apartment.

Here, the police officers had reason to believe Asbury was inside his residence. The police arrived at the residence just after daybreak because neighbors had informed them Asbury left home early in the morning. Although it was daylight, a light was on inside the residence and the kitchen window was open, suggesting someone was inside.[2] These circumstances are sufficient to establish a reasonable belief Asbury was within the residence at the time the officers entered. Because the officers reasonably believed Asbury was at home and entered the residence based on this belief, they were rightfully in a position to observe the electric blanket from which the electrical plug had been removed. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, *reh. denied*, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971); *State v. Brown*, 289 S.C. 581, 347 S.E.2d 882 (1986) (under "plain view" exception to warrant requirement, objects falling within the plain view of a law enforcement officer who is rightfully in a

---

**2.** Although testimony about the light is conflicting, on two occasions Detective Thompson unequivocally testified a light was on in the residence. This testimony supports the trial judge's decision. The trial judge is in a superior position to judge credibility and great deference must be given the judge's determination. *See Drayton v. Evatt,* 312 S.C. 4, 430 S.E.2d 517 (1993) (where matters of credibility are involved, the reviewing court will give great deference to a judge's findings because the reviewing court lacks the opportunity to directly observe the witnesses).

position to view the objects are subject to seizure and may be introduced as evidence).

This Court's scope of review is determined by our State constitution which limits our scope of review in law cases to the correction of errors of law. S.C. Const. Art. 5, § 5; S.C.Code Ann. § 14–3–330 (1976). In criminal cases, appellate courts are bound by fact findings in response to preliminary motions where there has been conflicting testimony or where the findings are supported by the evidence and not clearly wrong or controlled by an error of law. *State v. Amerson,* 311 S.C. 316, 428 S.E.2d 871 (1993), citing *City of Chester v. Addison,* 277 S.C. 179, 284 S.E.2d 579 (1981). Since the evidence supports the trial judge's finding the officers had a reasonable belief Asbury was at home at the time they attempted to effectuate his arrest, the trial judge properly concluded the evidence seen and eventually seized by the officers was admissible at trial. We find no abuse of discretion amounting to an error of law. *State v. Cutter,* 261 S.C. 140, 199 S.E.2d 61 (1973) (in criminal cases, this Court sits to review errors of law only).

## II.

Police officers who had conducted the search of Asbury's home testified briefly about some items which were seized from the home, including appliances with severed electrical cords and partial electrical cords. These items were not related to the crimes charged.[3] Asbury asserts the trial judge erred by overruling his motion to exclude reference to the appliances and partial electrical cords.

Evidence is relevant if it tends to make more or less probable a fact in issue. Whether evidence is relevant in a criminal prosecution is an issue within the trial judge's discretion. *State v. McWee,* 322 S.C. 387, 472 S.E.2d 235 (1996), *cert. denied* —— U.S. ——, 117 S.Ct. 695, 136 L.Ed.2d 618 (1997). However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Alexander,* 303 S.C. 377, 401 S.E.2d 146 (1991).

---

3. These items were not admitted into evidence.

Because the victim's hands and feet were bound with cut electrical cord, we find the testimony concerning the appliances and severed electrical cords found at Asbury's home was relevant. Moreover, the probative value of the testimony was not outweighed by the danger of unfair prejudice to Asbury. We find no error.

### III.

Appellant argues the trial judge erred by denying his motion for a directed verdict on the murder and kidnaping charges. We disagree.

The trial court has the duty to submit the case to the jury where the evidence is circumstantial if there is any substantial evidence which reasonably tends to prove the guilt of the accused or from which his guilt may be fairly and logically deduced. *State v. Brazell,* 325 S.C. 65, 480 S.E.2d 64 (1997); *see also State v. Edwards,* 298 S.C. 272, 379 S.E.2d 888, *cert. denied,* 493 U.S. 895, 110 S.Ct. 246, 107 L.Ed.2d 196 (1989). In ruling on a motion for a directed verdict, the trial judge is concerned with the existence or non-existence of evidence, not its weight. When this Court reviews the denial of a motion for a directed verdict, it views the evidence in the light most favorable to the non-moving party, and if there is any direct or substantial circumstantial evidence which reasonably tends to prove the guilt of the accused, refusal by the trial judge to direct a verdict is not error. *State v. Brazell, supra.*

Here, Asbury's fingerprints were found at the victim's residence. There was testimony electrical cords which bound the victim's hands and ankles had been cut by a pair of scissors found in Asbury's home. Moreover, there was evidence the same severed electrical cords had at one time been attached to an electric blanket found in Asbury's residence. This is substantial circumstantial evidence which reasonably tends to prove Asbury's guilt. Accordingly, the trial judge did not err by denying Asbury's motion for a directed verdict.

### IV.

Asbury was initially tried in early August 1993. A mistrial was declared. Immediately after the court authorized

reimbursement of expenses, Asbury's appointed counsel requested a transcript of the trial proceedings. Shortly before Asbury's second trial in early September 1993, Asbury moved for a continuance, arguing he had not yet received the transcript and it was necessary for him to effectively impeach witnesses with their inconsistent statements. The trial judge denied the motion, ruling the transcript would have been beneficial, but was not essential. Asbury argues this was error.

The decision to grant or deny a continuance is within the sound discretion of the trial judge. *State v. Register,* 323 S.C. 471, 476 S.E.2d 153 (1996). Reversals of the refusal to grant a continuance in a criminal case are about "as rare as the proverbial hens' teeth." *State v. Williams,* 321 S.C. 455, 469 S.E.2d 49 (1996).

Asbury has not established any prejudice from the lack of access to the transcript from his first trial. As noted in the record, the court reporter's back-up tapes from the first trial were available and Asbury could have requested use of these tapes, if necessary, to impeach a witness during trial. *State v. Owenby,* 267 S.C. 666, 668, 230 S.E.2d 898 (1976) ("it is preferable to have available the written transcript taken at the former hearing, but the unavailability of such a transcript does not preclude utilization of other means of proving to the court what the witness stated on a prior occasion"). We find no error in denying Asbury's request for a continuance.

AFFIRMED.

MOORE and WALLER, JJ., concur.

TOAL, J., and FINNEY, C.J., dissenting in separate opinions.

TOAL, Justice:

The defendant Willie James Asbury appeals his convictions of murder and kidnapping, asserting, *inter alia,* that the court erred in refusing to suppress evidence improperly seized from Asbury's home. I agree and must, therefore, dissent from the majority opinion.

▬▬▬▬▬▬

On January 6, 1992, six officers went to Asbury's trailer house to serve on him outstanding warrants and commitment orders unrelated to the present case. Asbury had been pinpointed as a suspect in the murder of Ezell Lawrence ("Victim"). The officers went to Asbury's residence early in the morning. When they arrived, they did not see any vehicles outside. The doors of the trailer house were locked, and no noises could be heard coming from inside. An officer testified that a light could be seen inside the house. The officers claimed that they knocked on the front door and called to Asbury, but did not receive a response. They decided to enter the trailer through an open window. Two officers, one following the other, entered through the window, while the others had their weapons drawn in order to protect the entering officers. They then opened the front door from inside.

In checking the rooms for Asbury, the officers found in plain view an electric blanket with its electrical plug missing. Asbury himself was not at home. The officers left the residence, but did not remove any evidence. They procured a search warrant two days later on January 8th and returned to the residence in order to seize the electric blanket. On January 15th, the officers secured another search warrant and seized numerous appliances that had had their electrical cords cut off, as well as other items in the residence that could be used to cut electrical cord, including a pair of scissors.

In *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court wrote that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." [1] *Id.* at 603, 100 S.Ct. at 1388, 63 L.Ed.2d at 661. The South Carolina Supreme Court

---

**1.** Although initially this language may have been viewed as dicta, since under the facts of *Payton*, the officers lacked an arrest warrant, the Supreme Court has cited it with approval in subsequent cases, *see Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), and it has been recognized as binding by the federal circuit and state courts that have considered the issue. *See United States v. Underwood*, 717 F.2d 482 (9th Cir.1983), *cert. denied*, 465 U.S. 1036, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984).

applied this standard in 1981 when it decided *State v. Loftin*, 276 S.C. 48, 275 S.E.2d 575 (1981) ("A valid arrest warrant implicitly grants police the limited authority to enter a suspect's residence 'when there is reason to believe the suspect is within.'") (quoting *Payton*). In *Loftin* the Court found that there were no facts or circumstances from which the police could have entertained a reasonable belief that the defendant was in his apartment. No one appeared to be at home when the police arrived, no one answered when the officers knocked on the door, and no sign of the defendant was perceived, despite a stake-out of an hour and a half. Accordingly, the evidence which the police found after the apartment complex manager let them into defendant's apartment was excludable as fruit of an illegal search.

Under the standard articulated in *Loftin*, the evidence in the present case would similarly be deemed as impermissibly seized because there was not reason to believe the suspect was within his trailer house. This is revealed by the testimony of one of the officers:

Q: And you got there and there was no evidence of anybody being present, was there?

A: When we first got there you really couldn't tell if anyone was present or not....

Furthermore, the officers did not see any vehicles outside, did not notice any activity, did not hear any noises from inside, and did not get a response when they knocked on the door. Although the officers claimed that they saw a light inside the residence, this was called into question on cross-examination.[2]

---

2. One officer testified as follows:

Q: You testified there were no lights before, didn't you?

A: I'm not sure on that. I might have. If I said no lights, then it may be an oversight.

Q: Well, you testified previously under oath in regards to your activities on the inside of his trailer house is that the only light that was available was a light, was light that was coming in from the sunlight, is that not correct sir?

A: Yes, sir, I believe so.

Q: There was no artificial light?

A: At that time I couldn't remember a light.

Further,

Q: Okay. Now you saw no lights at the trailer, correct sir?

A: I can't recall whether there was lights on or not at the time.

When the officers found the doors locked, they decided to enter through a window. Under these circumstances, I conclude the officers did not have reason to believe that the suspect was within. Because the police did not have the authority to enter into the home, the evidence which was later seized was the fruit of this illegal entry and search; thus, it should have been excluded. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (where evidence would not have come to light but for the illegal actions of the police, and the evidence has been obtained by the exploitation of that illegality, the evidence must be excluded); *State v. Plath,* 277 S.C. 126, 284 S.E.2d 221 (1981).

Such a finding not only comports with our own holding in *Loftin,* but it is also consistent with the application of the *Payton* standard by other jurisdictions. For example, the Second Circuit in *United States v. Lauter,* 57 F.3d 212 (2d Cir.1995) held that officers had reason to believe the defendant was present in his apartment when they sought to execute an arrest warrant.[3] The officers had received information from a confidential informant that the defendant had moved into the windowless apartment during the weekend, that he was unemployed, and that typically he slept late. They found him asleep inside the apartment when they entered one morning at 8:30 a.m.

The Georgia Court of Appeals held that the search subsequent to an entry pursuant to an arrest warrant was valid where prior to their entry, police observed a moving light in the apartment and heard noises from within. *Hardaway v.*

---

Q: You can't recall?
A: No, sir.

**3.** The majority posits that *Lauter* is indistinguishable from the circumstances in this case. A closer examination will reveal significant differences between the present case and *Lauter.* In *Lauter,* agents had received information from a confidential informant, whose father was the landlord of the apartment wherein the defendant resided. Further, Lauter had just moved into the apartment during the weekend. The agents had been informed that Lauter was unemployed. Moreover, they had been told that he typically slept late. Another distinguishing factor was that Lauter's apartment was windowless; thus, unlike Asbury's home, it was not possible for the officers to see any possible activity inside the residence.

*State,* 188 Ga.App. 310, 372 S.E.2d 845 (1988). Likewise, *United States v. Terry,* 702 F.2d 299 (2d Cir.), *cert. denied,* 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983) held that agents had the right to enter the defendant's home where they had verified the address through a phone listing and where upon arriving at the apartment building, they encountered a twelve-year old boy wearing a shirt with "Terry" on it, who told them that his parents lived in the apartment and did not indicate that his father was not at home. Further, agents arrived at 8:45 a.m. on a Sunday morning, a time they could reasonably believe Terry would be at home.

In contrast, the *Payton* standard was not satisfied in *People v. Cabral,* 147 Misc.2d 1000, 560 N.Y.S.2d 71 (N.Y.Sup.Ct. 1990), wherein police only had information that the defendant may have lived at the residence some six and one-half months earlier, where they had no additional information pointing to the presence of the defendant in the residence, and where someone whom the police recognized as not being the defendant answered the door; yet the police entered and searched the apartment anyway. The same conclusion was reached in *State v. Roepka,* 217 Neb. 139, 347 N.W.2d 857 (1984), in which police surrounded at 8:45 a.m. a trailer house, a location previously under surveillance. When they knocked on the door, a third-party answered the door and told the police the defendant was not within. The police, nevertheless, entered. The court found that based on these facts, the officers had no reason to believe the defendant was within the trailer house.

These cases are quite fact-specific; however, they do provide a general sense of what constitutes "reason to believe the suspect is within." In the present case, the officers could not have entertained a reasonable belief that Asbury was in his home. The majority argues that the presence of three factors—general information that early mornings and late evenings were good times to find Asbury at home, the existence of a light, and an open window in the house—were sufficient to give police reason to believe the suspect was within his residence. Even if we accept the existence of these factors, in light of all the indicia weighing against Asbury's presence at home, these factors would only give rise to a mere possibility,

not a reasonable belief, that Asbury was in his residence. These factors must be weighed against the officers' own testimony: "When we first got there you really couldn't tell if anyone was present or not," and against the facts that they found the residence's doors locked, noticed no activity, heard no noises from inside, and got no response when they knocked on the door.

However, the task of determining whether the officers had a reasonable belief is much easier. A closer examination reveals that there were not three factors present, but really only one. First, the open window is veritably a non-factor, as it is customary for many people, particularly in small towns in South Carolina, to leave their house windows open. An open window does not point to a person's presence at home, any more than a closed window suggests his absence. Second, I find that the record does not support the conclusion that the officers saw a light inside Asbury's residence. The majority suggests that the officers saw a light, as evidenced by the testimony of Detective Thompson. It is true that Thompson did testify to seeing a light; however, when two other officers testified that they did not remember seeing a light, it is highly questionable whether the light was a factor which led the police to believe Asbury was at home. When the factors of the light and the window are eliminated, we are then left with only one factor, namely, the information from neighbors. This sole factor cannot justify a reasonable belief by the officers that the suspect was at home.

The Fourth Amendment to the United States Constitution guarantees to individuals the right to be free from unreasonable searches and seizures. *State v. McKnight*, 291 S.C. 110, 352 S.E.2d 471 (1987). This is an instance in which Asbury's Fourth Amendment rights were violated. Accordingly, I would reverse the circuit court's denial of Asbury's motion to suppress.

FINNEY, C.J., concurs.