[773 NYS2d 148]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM L. MARSHALL, Appellant.

Third Department, March 4, 2004

APPEARANCES OF COUNSEL

*Guttman & Wallace*, Ithaca (*Charles Guttman* of counsel), for appellant.

*George M. Dentes, District Attorney*, Ithaca, for respondent.

### OPINION OF THE COURT

Rose, J.

As a result of the recovery by police of drugs and drug paraphernalia from his college residence, defendant was indicted on charges of criminal possession of a controlled substance in the first degree (three counts), criminal possession of a controlled substance in the third degree (three counts), criminal possession of a controlled substance in the fourth degree, criminal possession of a controlled substance in the seventh degree and criminally using drug paraphernalia in the second degree (two counts). Defendant moved to suppress the physical evidence on the ground that the police had no right to enter his residence hall and knock on his door at night to inquire as to possible criminal activity. Following a hearing, County Court denied the suppression motion based on its findings that the investigating officer had a founded suspicion upon which to come to defendant's residence and inquire, and the entries into his shared suite and individual bedroom were upon consent. After a bench trial, County Court found defendant guilty of all charges and subsequently sentenced him to concurrent prison terms, the longest of which are 15 years to life on the three counts of criminal possession of a controlled substance in the first degree. Defendant now appeals.

The events leading to defendant's arrest began at 12:30 A.M. on December 5, 2001 when Deputy Dawn Caulkins observed a new silver Chevrolet Impala with black tinted windows in the parking lot of the Farview Apartments—three residence halls used by students at the Tompkins-Cortland Community College. The College contracted with the Tompkins County Sheriff's Department to provide security in these three residence halls. About 30 minutes later, in another part of town, Caulkins observed the same vehicle speeding, pulled it over and interrogated its driver, Rashi Brown. When Caulkins asked about an

odor of burning marihuana, Brown admitted to having smoked half a joint 30 minutes earlier at the Farview Apartments. When asked with whom he had been smoking the marihuana, Brown identified defendant by name. In response to a question as to whether he could pay a fine, Brown showed Caulkins $100 in cash, but also admitted that he had no job and offered no explanation as to how he obtained the cash.

Caulkins testified that because she suspected Brown of having sold marihuana to defendant, she then returned to the Farview Apartments and, at approximately 1:30 A.M., contacted its resident director, Peter Foster, who confirmed that defendant lived there. At Caulkins's request, Foster admitted her to the locked residence hall where defendant resided and escorted her to the door of the suite that he shared with several other students. When Caulkins knocked on the door, a voice from within said "come in" and Caulkins and Foster then entered the suite. In addition to observing three people playing cards in the suite's common area, Caulkins saw defendant, who was dressed in jeans and a T-shirt, walking toward them in the suite's interior hallway. Defendant confirmed his identity and agreed to Caulkins's request to speak with him in the hallway outside the suite. After Caulkins told defendant about her encounter with Brown and he confirmed knowing Brown, he became visibly nervous and sweaty with a gray complexion. Caulkins asked him whether a canine search would detect anything in his room and he admitted to possessing a number of ecstasy pills. Defendant asked Caulkins if she wanted him to retrieve the pills. When she agreed, he walked to the door of the suite, held it open for her, retrieved the pills from the kitchen and gave them to her.

Defendant then agreed to speak further with Caulkins in his bedroom. When defendant appeared to be looking around the room for something, Caulkins asked if there was something else that she should know about. At that point, defendant hastily grabbed some currency and a box, ignored Caulkins's order to show his hands, forcibly pushed past her, exited his bedroom and ran down the suite's hallway. When he was promptly seized by a second police officer and Foster, a 33-ounce brick of cocaine fell from the box he was carrying. Defendant was then placed under arrest. A search warrant was obtained and additional cocaine, ecstasy pills and paraphernalia used to prepare drugs for sale were found in defendant's bedroom.

Defendant argues that County Court erred in denying his suppression motion because, without exigent circumstances,

Caulkins had no authority to be in his residence hall or knock on the door of his suite at night to investigate possible criminal activity. He also contends that suppression was required because there was neither founded suspicion justifying Caulkins's inquiries nor his consent to her entry into his residence hall or his suite.

In the absence of a precedent in New York precluding a police officer who lacks probable cause from knocking on the door and inquiring of the resident at night, we decline defendant's invitation to create one or to add limitations to the well-accepted predicates for different levels of police intrusion recognized in *People v De Bour* (40 NY2d 210, 223 [1976]; *see People v McIntosh*, 96 NY2d 521, 525 [2001]; *People v Williams*, 305 AD2d 804, 806 [2003]). Inasmuch as the purpose of Caulkins's visit to defendant's residence was to investigate whether he was engaging in criminal activity and her inquiries were accusatory in nature, her encounter with him was clearly a level two intrusion requiring a founded suspicion as its predicate (*see People v Hollman*, 79 NY2d 181, 191 [1992]; *People v Bailey*, 204 AD2d 751, 753 [1994]). This second level of intrusion—the common-law right to inquire—is allowed when the police have a "founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure" (*People v De Bour, supra* at 223; *see People v Hollman, supra* at 191-192; *People v Smith*, 256 AD2d 732, 732-733 [1998], *lv denied* 93 NY2d 929 [1999]).

The information obtained by Caulkins in her earlier encounter with Brown provided her with the requisite founded suspicion, entitling her to inquire. Brown's statements indicated that criminal activity—the possession of marihuana—had occurred recently in defendant's presence. Although Brown's statement that he had smoked marihuana "with defendant" may be ambiguous as to whether or not defendant also smoked marihuana, Caulkins's interpretation of the statement was not unreasonable under the circumstances. Similarly, Brown's possession of $100 in cash could have been innocent, but with no explanation for the cash offered by Brown, Caulkins's surmise that a sale of marihuana had occurred was not unreasonable.

Under these circumstances, Caulkins had an objective credible basis for her suspicion and was authorized to seek information from defendant by traveling to the location identified by Brown, obtaining consent from the resident director to enter a

common area of his residence hall and knocking on the door to the suite where he resided (*see People v Funches*, 89 NY2d 1005, 1007 [1997]; *People v Fells*, 279 AD2d 706, 709 [2001], *lv denied* 96 NY2d 758 [2001]). The evidence also provides sufficient support for County Court's conclusion that Caulkins's subsequent entry into defendant's suite was with the consent of one of its lawful inhabitants, and her discussion with defendant in the exterior hallway, her recovery of the ecstasy pills and her entry into his bedroom all occurred with his voluntary consent (*see People v Dobson*, 285 AD2d 737, 738 [2001], *lv denied* 97 NY2d 658 [2001]). Thus, County Court properly denied suppression of the physical evidence found in his residence.

Defendant's remaining contentions have been examined and found to be equally unpersuasive.

MERCURE, J.P., CREW III, CARPINELLO and KANE, JJ., concur.

Ordered that the judgment is affirmed.