■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ABRIL S. MADDEN, Respondent. [871 NYS2d 766]—

Mercure, J.P. Appeal from an order of the County Court of Tompkins County (Rowley, J.), entered February 15, 2008, which granted defendant's motion to suppress certain evidence and dismissed the indictment.

Following her arrest in the City of Ithaca, Tompkins County, for possession of narcotics, the then 16-year-old defendant was charged in an indictment with criminal possession of a controlled substance in the third degree and false personation. She thereafter moved to suppress evidence obtained when three police officers, acting on an anonymous tip, searched her hotel room, revealing two small bags of marihuana, 12 individually

wrapped pieces of crack cocaine, and a school identification card. Testimony during the suppression hearing revealed that upon receiving the anonymous tip, three officers proceeded to defendant's hotel room at approximately 1:15 A.M., without conducting a preliminary investigation regarding the alleged drug activity at the hotel. The officers knocked on the door and, when defendant—who was alone in the room and wearing sleeping attire—answered, one of the officers informed her that they had "received a call about drug dealing." After defendant denied possession or having any knowledge of drugs and gave the officers a name that later proved false, one of the officers asked defendant "if she minded that we come inside the room to look around," and defendant agreed.

Although the officers did not observe any criminal activity or drugs in plain view, one officer searched defendant's purse allegedly upon consent. The search revealed two small bags of marihuana and a school identification card with defendant's picture and real name. The officers then allegedly handcuffed defendant and threatened to bring dogs to search the room if she did not sign a consent-to-search form. Defendant signed the form, and a further search revealed the 12 pieces of crack cocaine.

Relying on *People v De Bour* (40 NY2d 210 [1976]), County Court concluded that the officers lacked a founded suspicion to ask permission to look around the hotel room and search defendant's purse, and, thus, the subsequent search of the room was illegal. The court declined to resolve "defendant's claim of involuntariness with regard to her consent to the search," granted defendant's motion to suppress the evidence, and dismissed the indictment. The People appeal, and we now reverse and remit.

County Court erred in applying the level two common-law right to inquire standard set forth in *People v De Bour* (40 NY2d 210 [1976], *supra*) in resolving defendant's suppression motion. As the Court of Appeals has repeatedly explained, the "purpose [of] *De Bour* was to provide clear guidance for police officers seeking to act lawfully in what may be *fast-moving street encounters* and a cohesive framework for courts reviewing the propriety of police conduct *in these situations*" (*People v Moore*, 6 NY3d 496, 499 [2006] [emphasis added]; *see People v Turriago*, 90 NY2d 77, 83 [1997]; *People v De Bour*, 40 NY2d at 223; *see generally People v Dunbar*, 5 NY3d 834, 835 [2005]). Here, in contrast, the search took place in a hotel room and, thus, the issue is whether the warrantless search of defendant's hotel room was lawful (*see e.g. People v Oldacre*, 53 AD3d 675, 677 [2008];

*People v Gittens*, 34 AD3d 693, 694 [2006], *lv denied* 8 NY3d 880 [2007]; *People v D'Antuono*, 306 AD2d 890, 890 [2003], *lv denied* 100 NY2d 593 [2003], *cert denied* 541 US 994 [2004]). That is, the critical question is not whether the police had a founded suspicion that justified their knocking on defendant's door and asking her whether they could look around her hotel room; the concept of founded suspicion is irrelevant here. Rather, the relevant question to be resolved is whether "[o]ne of the limited exceptions to the warrant requirement and, indeed, to the requirement of *probable cause*, [applies—] voluntary consent to the search" (*People v Gonzalez*, 39 NY2d 122, 127 [1976] [emphasis added]; *see People v Oldacre*, 53 AD3d at 677; *People v Gittens*, 34 AD3d at 694; *People v D'Antuono*, 306 AD2d at 890; *see also People v Johnson*, 17 AD3d 932, 934 [2005], *lv denied* 5 NY3d 790 [2005]; *People v Fells*, 279 AD2d 706, 709 [2001], *lv denied* 96 NY2d 758 [2001]; *People v Mc-Kenzie*, 263 AD2d 778, 779 [1999], *lv denied* 93 NY2d 1045 [1999]; *cf. People v Dunbar*, 5 NY3d at 835; *People v Boyea*, 44 AD3d 1093, 1094-1095 [2007]; *but see People v Marshall*, 5 AD3d 42, 45-46 [2004], *lv denied* 2 NY3d 802 [2004]; *People v Cesar*, 111 AD2d 707, 711 [1985], *appeal dismissed* 67 NY2d 752 [1986]).

In response to the concurrence, we note that citizens in their homes are, in fact, entitled to greater protection than those on the street. "Governmental intrusion into the privacy of the home is, with limited exceptions, prohibited by constitutional limitations in the absence of a valid search warrant" (*People v Gonzalez*, 39 NY2d at 127 [citations omitted]). As noted, a *De Bour*-type analysis was never intended to apply and may not properly be applied to criminal investigations at a residence. Rather, a warrant supported by probable cause—a more exacting standard than founded suspicion—is required before such investigations will be permitted; in the absence of a warrant, governmental intrusion into the privacy of the home will not be permitted unless an exception to the warrant requirement applies (*see People v Gonzalez*, 39 NY2d at 127).

As the People assert, County Court expressly declined to reach the issue of whether consent was voluntarily given, such that the consent exception to the warrant requirement was applicable here. Accordingly, we reverse and remit this matter to County Court for a determination of whether defendant voluntarily admitted the officers into the hotel room and consented to any of the searches thereafter performed. In that regard, the circumstances of the initial police intrusion here that trouble the concurring justices—in addition to, among other things,

defendant's age, prior contact with police, and whether she was adequately advised of her right to refuse consent—are factors to be considered in determining the voluntariness of the consent (*see id.* at 128-130).

Peters and Lahtinen, JJ., concur.

Kane, J. (concurring). While we agree with the majority's conclusion that County Court must determine if defendant's consents to search were voluntary, we do not entirely agree with the reasoning employed. The majority correctly points out that *People v De Bour* (40 NY2d 210 [1976]) applies to initial police encounters with citizens on the streets, but we believe that a *De Bour*-type analysis is also appropriate when reviewing police encounters with individuals in residences. Employing such an analysis here, the police had a founded suspicion of criminality permitting them to approach the door to defendant's hotel room.

The majority opines that the inquiry here is limited to whether probable cause, or an exception to that requirement, justified the search. This limitation is too narrow. We cannot agree with a holding that eliminates the courts' ability to examine the reasonableness of the initial police decision to select and approach a particular residence to request consent for a search. While *People v De Bour* (*supra*) is limited to "fast-moving *street encounters*" (*People v Moore*, 6 NY3d 496, 499 [2006] [emphasis added]), citizens in their homes should be entitled to as much, if not more, protection from intrusion than when they are on the street or in their cars (*see Georgia v Randolph*, 547 US 103, 115 [2006]; *compare People v Dunbar*, 5 NY3d 834 [2005] [applying *De Bour* standards to police request to search person and car]). "[T]he home is entitled to special protection as the center of the private lives of our people" (*Minnesota v Carter*, 525 US 83, 99 [1998, Kennedy, J., concurring]) and "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed" (*United States v United States Dist. Court for Eastern Dist. of Mich.*, 407 US 297, 313 [1972]; *see Payton v New York*, 445 US 573, 576, 589-590 [1980]). An analysis similar to that under *De Bour* is necessary to prevent police from unreasonably interfering with the repose of citizens in their residences.

This Court has previously applied a *De Bour*-type analysis when reviewing the search of a person's residence, in holding that police must have a " 'founded suspicion that criminal activity is afoot' " before reaching the second level of intrusion—the common-law right to inquire (*People v Marshall*, 5 AD3d 42, 45 [2004], *lv denied* 2 NY3d 802 [2004], quoting *People v De Bour*, 40 NY2d at 223; *see People v Cesar*, 111 AD2d 707, 711 [1985],

*appeal dismissed* 67 NY2d 752 [1986]). A failure to apply this standard would permit police to knock on any door at any time and request consent to search people's homes for any reason or no reason whatsoever, tying courts' hands by permitting review only of the consent granted after such an initial intrusion.

The imperative nature of the review of the initial intrusion is highlighted in this case, where the police knocked on the door at approximately 1:15 A.M. and apparently awoke the occupant, who answered the door in sleeping attire. Observing no criminal activity, the three police officers, while occupying the threshold, nevertheless asked the occupant if they could search the room. While some contend that a resident can simply tell the police to "go away," this statement underestimates the coercive power of the state and the tendency of most citizens to automatically comply with police requests, whether or not the requests are reasonable. To protect the liberty of citizens in their homes, the initial approach to a residence should not be permitted without a reasonable basis (*see People v Marshall*, 5 AD3d 42 [2004], *supra*; *see also People v Lobley*, 31 AD3d 1161, 1163 [2006]).

We agree with the majority that actual physical entry into the home is governed by the constitutional warrant requirement or an established exception to that requirement. But the majority would place no restriction on the right of the police to initially approach a home at any hour to conduct a criminal inquiry. We, on the other hand, would restrict police access to investigate criminal activity at a residence to circumstances where there is a founded suspicion of criminality at that residence. Only then may they disturb the occupant in furtherance of the investigation.

Prior cases have held that an anonymous tip can provide police with a founded suspicion of criminality (*see People v Moore*, 6 NY3d at 498-500; *People v Major*, 263 AD2d 360, 361 [1999], *lv denied* 94 NY2d 825 [1999]; *People v Lindsay*, 249 AD2d 937, 937 [1998], *lv denied* 92 NY2d 900 [1998]). Here, the anonymous tip of criminal activity was sufficient to justify the initial police contact. Thus, we agree with the majority's ultimate conclusion to remit for a determination on the issue of consent.

Rose, J., concurs. Ordered that the order is reversed, on the law, motion denied and matter remitted to the County Court of Tompkins County for further proceedings not inconsistent with this Court's decision.