THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TIRAY M. PAIGE, Appellant. [911 NYS2d 176]—

Rose, J. Appeal from a judgment of the County Court of Franklin County (Main, Jr., J.), rendered August 20, 2007, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree and obstructing governmental administration in the second degree.

When three State Troopers seeking to execute an arrest warrant for Kimberly Laroe knocked on the door of her residence, defendant refused to let them in. The troopers then kicked the door open and arrested defendant for obstructing governmental administration in the second degree. Defendant was also charged with criminal possession of a controlled substance in

_v Rosen_, 96 NY2d 329 [2001], _cert denied_ 534 US 899 [2001]; _see also People v West_, 5 NY3d 740 [2005], _cert denied_ 546 US 987 [2005]).

the third degree after the troopers found a significant amount of what proved to be cocaine in the bedroom. After a jury trial, defendant was convicted of both crimes and sentenced as a second felony offender to 10 years in prison for criminal possession of a controlled substance in the third degree and a concurrent term of one year of incarceration for obstructing governmental administration in the second degree. Defendant now appeals, and we affirm.

Defendant does not challenge the legitimacy of the arrest warrant, allowing us to presume that it was based on probable cause. Instead, he argues that entry was unlawful and the evidence seized from the bedroom should have been suppressed because the troopers failed to properly announce their authority and did not have a reasonable basis for the belief that Laroe was in her residence at the time. "We start with the proposition that 'an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives where there is reason to believe the suspect is within'" (*People v Murray*, 267 AD2d 492, 494 [1999], *lv denied* 94 NY2d 923 [2000], quoting *Payton v New York*, 445 US 573, 603 [1980]; *see* CPL 120.80 [4]; *People v Gerecke*, 34 AD3d 1260, 1261 [2006], *lv denied* 7 NY3d 925 [2006]). Prior to entering, notice of the authority and purpose for entry must be given (*see* CPL 120.80 [4]). If there is a reasonable belief that the suspect is present within the residence and admittance is not allowed after the required notice is given, forcible entry is permitted (*see* CPL 120.80 [4], [5]). The reasonable belief standard is less stringent than the probable cause standard, it is based on an assessment of the totality of circumstances and an officer's belief, if reasonable, need not be correct (*see United States v Lovelock*, 170 F3d 339, 343-344 [1999], *cert denied* 528 US 853 [1999]; *United States v Lauter*, 57 F3d 212, 215 [1995]).

Here, there was testimony that the troopers knocked on the door of Laroe's residence at approximately 8:45 A.M. and identified themselves to defendant as State Police and as having an arrest warrant for Laroe. Defendant opened the door partway and, in response to State Police Investigator William Bronner's questions, confirmed that it was Laroe's residence. Defendant told Bronner that Laroe was not there and that she had gone to the City of Plattsburgh, Clinton County with her mother, but he was not sure where Laroe was. Defendant was only able to identify the mother as Victoria and could not identify the type of vehicle the mother drove. Defendant also told Bronner that Laroe did not have a vehicle. While being asked questions, defendant looked back over his shoulder into the apartment. Bron-

ner twice told defendant that he believed Laroe was in the apartment, that they needed to execute the warrant and that defendant faced arrest if he did not allow them into the residence. Instead of again denying that Laroe was in the apartment, defendant twice responded that he would not let the troopers in. As Bronner then began to turn to go to his vehicle and get the warrant, defendant slammed the door. Given defendant's inability to tell the troopers where Laroe was, his confirmation that it was her residence and his act of looking back over his shoulder into the apartment, Bronner believed that Laroe was in the residence and that defendant slammed the door to prevent the troopers from executing the warrant. Finding the door locked, the troopers then kicked it open, entered the apartment and placed defendant—who was headed toward the bedroom—in custody. Giving due deference to County Court's credibility determinations (*see People v Prochilo*, 41 NY2d 759, 761 [1977]; *People v Harper*, 73 AD3d 1389, 1389 [2010]), we conclude that the evidence supports its finding that Bronner's belief was reasonable, the entry into the residence was lawful and the motion to suppress the evidence found in the apartment was properly denied (*see People v Barnhill*, 34 AD3d 933, 934 [2006], *lv denied* 8 NY3d 843 [2007]; *People v Ebron*, 275 AD2d 490, 491 [2000], *lv denied* 95 NY2d 934 [2000]; *People v Harrell*, 208 AD2d 647 [1994], *lv denied* 85 NY2d 862 [1995]).

Defendant also challenges the legal sufficiency and weight of the evidence concerning both charges. At the close of the People's case, however, defendant moved to dismiss the possession charge alone. Thus, his claim that the evidence was not legally sufficient to sustain the obstruction charge was not preserved for appellate review (*see People v Finger*, 95 NY2d 894, 895 [2000]; *see generally People v Gray*, 86 NY2d 10, 19 [1995]). Nevertheless, " 'we necessarily review the evidence adduced as to each of the elements of the crimes in the context of our review of defendant's challenge regarding the weight of the evidence' " (*People v Newkirk*, 75 AD3d 853, 855 [2010], quoting *People v Caston*, 60 AD3d 1147, 1148-1149 [2009]; *see People v Danielson*, 9 NY3d 342, 348-349 [2007]). Upon our review of the evidence in a neutral light, weighing the relative probative force of the proof and according due deference to the jury's credibility determinations, we find that, although a different verdict would not have been unreasonable, the jury's conclusion that defendant intentionally interfered with the performance of an official function is not against the weight of the evidence (*see* Penal Law § 195.05; *People v Baltes*, 75 AD3d 656, 659 [2010]; *People v Tarver*, 188 AD2d 938 [1992], *lv denied* 81 NY2d 893 [1993]).

With respect to the charge of criminal possession of a controlled substance in the third degree, the People were required to establish that defendant knowingly and unlawfully possessed more than one-half ounce of cocaine (*see* Penal Law § 220.16 [12]; § 220.00 [7]; Public Health Law § 3306 [schedule II] [b] [4]). Having pursued a theory of constructive possession, the People were required to show that defendant exercised dominion and control over the place where the cocaine was found (*see* Penal Law § 10.00 [8]; *People v Manini*, 79 NY2d 561, 573 [1992]; *People v Sawyer*, 23 AD3d 845, 846 [2005], *lv denied* 6 NY3d 852 [2006]). The evidence at trial established that after securing defendant in custody, the troopers searched the bedroom for Laroe and discovered, among other things, a clear plastic baggie containing what was later determined to be cocaine weighing 2.8 ounces in plain view on a nightstand. There was also evidence that defendant appeared to have recently woken up, he had been sleeping in the bed next to the nightstand, and pants containing defendant's identification were found on a suitcase located next to the nightstand. Viewing this direct evidence in a light most favorable to the People, we conclude that it was legally sufficient to establish defendant's dominion and control over the cocaine (*see People v Young*, 48 AD3d 901, 902-903 [2008]; *People v Arrington*, 31 AD3d 801, 803 [2006], *lv denied* 7 NY3d 865 [2006]; *People v Elhadi*, 304 AD2d 982, 983 [2003], *lv denied* 100 NY2d 580 [2003]). Upon our review of the evidence in a neutral light and giving deference to the jury's opportunity to resolve issues of credibility, we also conclude that the conviction is not against the weight of the evidence (*see People v Vargas*, 72 AD3d 1114, 1118-1119 [2010], *lv denied* 15 NY3d 758 [2010]; *People v Echavarria*, 53 AD3d 859, 862 [2008], *lv denied* 11 NY3d 832 [2008]; *People v Tarver*, 292 AD2d 110, 114 [2002], *lv denied* 98 NY2d 702 [2002]).

Defendant's contention that he was entitled to a circumstantial evidence charge is not preserved for review, as he did not request such a charge at trial (*see People v Hampton*, 64 AD3d 872, 877-878 [2009], *lv denied* 13 NY3d 796 [2009]; *People v Sawyer*, 23 AD3d at 847; *People v Layman*, 284 AD2d 558, 559 [2001], *lv denied* 96 NY2d 903 [2001]). Finally, in light of the large amount of cocaine involved, the scale and currency found with it, and defendant's previous felony conviction resulting in incarceration, we find no abuse of discretion or extraordinary circumstances warranting a reduction of the sentence (*see People v Manley*, 70 AD3d 1125, 1125 [2010]; *People v Patchen*, 46 AD3d 1112, 1114-1115 [2007], *lv denied* 10 NY3d 814 [2008]).

Kavanagh and Egan Jr., JJ., concur.

McCarthy, J. (dissenting). The Fourth Amendment to the US Constitution provides citizens with protection from unreasonable searches by the government. Both it and the NY Constitution state that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated" (NY Const, art I, § 12; US Const 4th Amend). Consistent therewith, police officers may only execute an arrest warrant in a suspect's residence if they have a reasonable belief that the suspect is present therein (*see* CPL 120.80 [4]). Because "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed" (*United States v United States Dist. Court for Eastern Dist. of Mich.*, 407 US 297, 313 [1972]), "the law requires some modicum of concrete, believable information of recent vintage, pointing to the suspect's presence at the time his [or her] home is searched. To accept a lesser standard would invite the arresting officer's entry into the home at his [or her] own convenience so long as he [or she] holds the warrant. That alternative is legally and historically unacceptable" (*People v Cabral*, 147 Misc 2d 1000, 1007-1008 [1990]; *cf. People v Madden*, 58 AD3d 1023, 1026-1027 [2009, Kane, J., concurring]). The majority has, unfortunately, approved of that patently unacceptable—and constitutionally infirm—alternative, requiring us to dissent.

Defendant was arrested based upon the fruits of a search by police officers after they entered Kimberly Laroe's apartment without a search warrant or consent. Although they had obtained an arrest warrant for Laroe, an arrest warrant only authorized the officers to enter her residence if they had a reasonable belief that she was present (*see* CPL 120.80 [4]; *see also Payton v New York*, 445 US 573, 603 [1980]). Even if we fully accept the testimony of State Police Investigator William Bronner, which County Court deemed credible, the evidence at the suppression hearing wholly failed to establish the reasonableness of Bronner's belief that Laroe was present in the apartment. Defendant's suppression motion should, therefore, have been granted, requiring dismissal of the indictment.

On the morning of March 20, 2006, Bronner, accompanied by two other State Troopers, knocked on the door of Laroe's apartment and announced that they were with the State Police. Defendant, who appeared as if he had just woken up, opened the door dressed only in underwear and a t-shirt. In response to questions, he provided his name and responded that Laroe was not home at the time, although she did live at that residence. Bronner again asked if Laroe was home, and defendant again

replied that she was not. When asked if he knew where Laroe was, defendant indicated that she had gone to the City of Plattsburgh, Clinton County with her mother, "but he wasn't sure exactly where." Defendant stated that he was not sure what kind of car Laroe's mother drove. When asked who Laroe's mother was, he responded with the first name Victoria. Bronner was not asked if he followed up on either of those responses for more specific information, such as the color or general description of the mother's vehicle or whether defendant knew the mother's last name. Defendant informed Bronner that he was staying at the apartment. He also responded that Laroe was renting the place from a friend. According to Bronner, at one point during this conversation, which lasted a couple of minutes, defendant looked over his shoulder toward the inside of the apartment. When Bronner stated that he believed Laroe was inside the apartment and that the troopers needed to execute the arrest warrant, defendant indicated that he could not let them do so. Bronner then told defendant that he could get in trouble or be arrested for not allowing them to execute the warrant, leading defendant to once again respond that he could not let them into the residence. As Bronner was then turning away from the door, he testified that he heard the door slam. He tried to open the door, but found it locked. At that point, he decided that Laroe was inside the apartment and kicked the door in. Upon searching the apartment, the troopers discovered that Laroe was indeed not present therein, but they did discover cocaine.

Bronner testified that defendant responded to all of his questions, including acknowledging that Laroe was his girlfriend and that she lived at that residence. While the door was not wide open, it was open enough for the troopers to see defendant; this was understandable because defendant was not fully dressed and it was a cold March morning, with snow on the ground. Bronner looked back into the apartment and did not see anything or anyone. He also did not hear anything in the background. Only once during the "couple of minutes" that he was talking with defendant did defendant look over his shoulder. There were no cars near the residence, but defendant informed Bronner that Laroe did not own a car. Bronner acknowledged that if defendant had just woken up, as was possible based on Bronner's observations of defendant's appearance, defendant may not know precisely what Laroe had done earlier that day. The troopers did not at any time show defendant the arrest warrant for Laroe and, in fact, the warrant was in their car.

When asked what specifically led him to believe that Laroe

was in the apartment, Bronner testified that "there was no car in the driveway. He indicated to me that her mom had come to pick her up. He had been in bed, it was between 8:30 and [9:00] in the morning. Um, he wasn't sure where she was or where she had gone in Plattsburgh although he indicated that she left with her mother and his mannerisms while we were speaking to him, looking back into the apartment as I was speaking to him, I had the distinct impression that she was in the apartment." Although Bronner testified that he "decided" or had the "impression" that Laroe was in her apartment, the legal question is whether that belief was objectively reasonable (*see* CPL 120.80 [4]; *United States v Lauter*, 57 F3d 212, 215 [1995]). Based on Bronner's testimony at the suppression hearing, it was not. Conclusory statements about the "impression" he got from defendant's actions or "mannerisms" are insufficient, as Bronner did not explain what specific actions and mannerisms led to his conclusion regarding Laroe's presence in the apartment. "[T]he constitutional requirement is that [police officers] have a basis for a reasonable belief as to the operative facts" (*United States v Lovelock*, 170 F3d 339, 344 [1999], *cert denied* 528 US 853 [1999]).

The only specific action mentioned was defendant looking over his shoulder once during a conversation that lasted a couple of minutes. While certainly a relevant factor, that action, by itself, was insufficient as a matter of law and the remainder of the evidence failed to provide a reasonable basis to form a belief that Laroe was present. The lack of a car in the driveway was consistent with defendant's statements that Laroe was not present and that she did not own a car. Defendant's statement that Laroe's mother had picked her up was not suspicious, given that she did not own a car. Bronner testified that defendant indicated that Laroe had gone to Plattsburgh, although he later testified that "the impression that I got was [that defendant] wasn't sure where she was." He did not explain what defendant did to create that impression. He also did not explain whether he meant that "the impression that [he] got" was that defendant did not really know if Laroe was in Plattsburgh, or if defendant was not sure precisely where in Plattsburgh she went. If Laroe left early in the morning, while defendant was still sleeping, it was understandable that defendant did not know her exact whereabouts. Similarly, if she had advised him that she was going to Plattsburgh, she may not have stated or he may not have asked her to identify precisely which stores or businesses she planned to visit. Without further explanation, none of Bronner's factual testimony—as distinguished from his impressions, conclusions or vague references to "manner-

isms"—established that he possessed an objectively reasonable belief that Laroe was present in the apartment when they kicked in the door (*see People v Brown*, 56 AD2d 543, 544-545 [1977]). A review of the evidence available to the troopers at the time, viewed in the totality of the circumstances, leads to the conclusion that the facts did not support County Court's finding that their belief was reasonable (*compare United States v Magluta*, 44 F3d 1530, 1537-1538 [1995], *cert denied* 516 US 869 [1995]).

The People and the majority note that defendant twice refused to allow the police to enter the residence, implying that this was a factor leading the troopers to reasonably believe that Laroe was inside. When dissected, the argument is that the police can request consent to enter and thereby be permitted to enter based on whatever answer is given: if the answer is yes, the police have secured consent, and may therefore enter; if the answer is no, the response provides the police with the requisite reasonable belief that the person is being evasive to help the subject of the arrest warrant avoid arrest, thereby permitting them to enter to execute the arrest warrant. Such an argument is based upon faulty logic (*see People v Cabral*, 147 Misc 2d at 1007).

Similarly, the People and the majority focus on defendant's act of slamming the door.[1] After a couple of minutes of defendant being cooperative and answering each and every one of Bronner's questions—all while standing in the doorway on a cold morning, having apparently been awakened by the police, and wearing only his underwear and a t-shirt—Bronner essentially informed defendant that the troopers did not believe him and that they intended to enter the apartment to find Laroe despite defendant's repeated statements that she was not inside. Bronner even informed defendant that he could be arrested for not allowing them to execute the arrest warrant.[2] However, if Laroe was not, in fact, inside the residence and the troopers did

---

1. While we may only rely on evidence presented at the hearing when reviewing County Court's decision on the suppression motion, it is interestingto note that when questioned at trial about the "slam" of the door, Bronner hedged his testimony, stating that the door "wasn't closed quietly but it wasn't a full, wide-open slam."

2. At this point, defendant had already twice informed Bronner that Laroe was not inside the residence. Yet the majority insists that when Bronner stated that defendant could be arrested if he did not let them enter the residence, defendant should have "again den[ied] that Laroe was within" rather than telling the troopers that he would not let them in. The law does not impose such a requirement, and defendant's failure to deny Laroe's presence for a third time, without even being asked, did not independently, or when considered together with all of the other circumstances, provide the troopers with a reasonable basis to believe that Laroe was in the apartment.

not at that time have a reasonable belief that she was present in the residence, they had no authority to enter the residence to execute the warrant (*see* CPL 120.80 [4]). Bronner in essence threatened defendant with arrest to obtain consent to search the home when the police could not otherwise enter, causing defendant to react by terminating the conversation and invoking his Fourth Amendment rights by closing the door. The People and the majority now attempt to use defendant's reasonable and constitutionally protected reaction as post hoc support for Bronner's purported "reasonable belief" and actions of kicking in the door, arresting defendant for obstructing governmental administration and searching the apartment.

We simply cannot agree with this lesser standard approved of by the majority; it essentially permits any police officer with an arrest warrant to decide for himself or herself, without any objective basis whatsoever, that a person who answers the door is lying and harboring a suspect, thus permitting wholesale entry into residences in contravention of the protections afforded to citizens against unreasonable searches and seizures by the government. The search here violated defendant's federal and state constitutional rights (*see* US Const 4th Amend; NY Const, art I, § 12). The evidence seized during the course of that search was fruit of the poisonous tree (*see Wong Sun v United States*, 371 US 471, 488 [1963]). Accordingly, County Court should have granted defendant's suppression motion and dismissed the indictment. Spain, J.P., concurs.

Ordered that the judgment is affirmed.