People v Newman (2019 NY Slip Op 01263)





People v Newman


2019 NY Slip Op 01263


Decided on February 21, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 21, 2019

108102

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
THOMAS L. NEWMAN, Appellant.

Calendar Date: January 16, 2019

Before: Garry, P.J., Clark, Mulvey, Aarons and Rumsey, JJ.


Paul J. Connolly, Delmar, for appellant.
Stephen K. Cornwell Jr., District Attorney, Binghamton (Rita M. Basile of counsel), for respondent.



MEMORANDUM AND ORDER
Garry, P.J.
Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered November 4, 2015, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree (three counts), criminal possession of a controlled substance in the fourth degree and criminally using drug paraphernalia in the second degree.
In July 2014, City of Binghamton police officers executed a search warrant and discovered narcotics, cash and items associated with the sale of drugs in an apartment shared by defendant and his girlfriend. Defendant was charged with criminal possession of a controlled substance in the third degree (three counts), criminal possession of a controlled substance in the fourth degree and criminally using drug paraphernalia in the second degree. After a jury trial, defendant was convicted as charged and sentenced to concurrent prison terms, the longest of which was five years, followed by two years of postrelease supervision. Defendant appeals.
County Court properly denied defendant's motion to dismiss the indictment on the ground that the grand jury proceeding was defective [FN1]. Our review of the grand jury minutes in [*2]the light of defendant's contentions reveals that the proceeding was conducted before the requisite number of grand jurors (see CPL 190.25 [1]; 210.35 [2]; People v Robinson, 156 AD3d 1123, 1128 n 8 [2017], lv denied 30 NY3d 1119 [2018]), and the instructions were sufficient to permit the grand jury to make intelligent determinations as to whether crimes had been committed and whether there was legally sufficient evidence to establish the crimes' material elements (see People v Calbud, Inc., 49 NY2d 389, 394-395 [1980]; People v Waddell, 78 AD3d 1325, 1326 [2010], lv denied 16 NY3d 837 [2011]). We find no basis upon which to conclude that the proceeding "fail[ed] to conform to the requirements of [CPL article 190] to such degree that the integrity thereof [was] impaired and prejudice to . . . defendant [might] result" (CPL 210.35 [5]; see People v Malloy, 166 AD3d 1302, 1303 [2018]).
We reject defendant's claim that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence on the ground that the People failed to prove that he, rather than his girlfriend, possessed the contraband found in their apartment. The legal sufficiency argument is unpreserved, as defendant failed to raise it in his general trial motion to dismiss the indictment (see People v Finch, 23 NY3d 408, 422-423 [2014]). Nevertheless, "we necessarily review the evidence adduced as to each of the elements of the crimes in the context of our review of defendant's challenge regarding the weight of the evidence" (People v Paige, 77 AD3d 1193, 1195 [2010] [internal quotation marks and citations omitted], affd 16 NY3d 816 [2011]; see People v Danielson, 9 NY3d 342, 348-349 [2007]).
The testimony of the People's witnesses established that Thomas Brady, an investigator with the City of Binghamton police department and a member of the narcotics task force, applied in July 2014 for a warrant to search the persons of defendant and his girlfriend, as well as the apartment where they resided. Two other members of the narcotics task force surveilled defendant's apartment while waiting for the warrant to be signed. The officers saw defendant leave the residence and followed his car. When they were notified that the warrant had been signed, the officers pulled defendant over, informed him of the warrant, searched him and discovered no contraband [FN2]. Defendant was then taken to the police station, where Brady gave him Miranda warnings, told him that the warrant authorized the search of his residence and asked him if he would accompany police to the apartment to secure his dogs. Defendant agreed and, upon arriving at the apartment, gave a key to the SWAT team that was attempting to make entry. The team had difficulty with the key and used a battering ram to enter the apartment.
Defendant, his girlfriend and two children were held in the living room while police searched the residence. Possessions appearing to belong to a man and a woman were commingled in a bedroom, with most of the man's possessions on the left side of the room and most of the woman's possessions on the right. In a recipe box on top of a dresser on the right side of the room, officers found a clear plastic capsule and three "knotted wraps" — described by Brady as corners of plastic bags that had been tied shut — containing what was later found to be crack cocaine. A letter addressed to defendant, another letter addressed to the girlfriend and two more knotted wraps — one containing what police suspected to be a cutting agent and one that proved to contain crack cocaine — were found in the dresser drawers. A larger plastic bag containing what was later identified as crack cocaine, packaged in 17 knotted wraps, was found in a woman's shoe in a closet on the right side of the room. An unlabeled pill bottle containing [*3]180 oxycodone pills was found in another woman's shoe, and no related prescription was found. Police found $305 in cash in a woman's purse, and $2,100 was found in a safe on the left side of the bedroom, where men's clothing was primarily located.
A digital scale, another knotted wrap and a coffee filter containing a white chunky substance were found close together on top of the kitchen cabinets; later analysis revealed that the contents of the wrap and the filter were not controlled substances. On an outside porch, police found a ceramic plate containing a razor blade, a plastic bag and white residue that proved not to be a controlled substance. No pipes or other paraphernalia used to ingest drugs were found in the apartment. The officers testified that, during the search, the girlfriend told them that the three knotted wraps found in the recipe box belonged to her for personal use. They further testified that defendant asked whether the girlfriend would be permitted to stay with the children if he "claim[ed] everything," and was told that both would be arrested.
Brady testified that, based on his experience in narcotics investigations, drug users "very seldom" had large amounts of money and were usually found with small amounts of narcotics, empty packaging and implements for the use of drugs. In contrast, drug dealers did not ordinarily have implements for using drugs, and were likely to have "larger amounts of narcotics [and] . . . scales, packaging material, razor blades, cutting agents, safes" and "large sums of currency." He testified that crack cocaine was often sold in wraps like those found in the apartment and that dealers often packaged multiple wraps of crack cocaine together in larger bags to make it easier to transport. He also testified that a street market existed in Broome County for pills such as oxycodone.
Defendant asserts that the People failed to prove beyond a reasonable doubt that he possessed any controlled substances, noting that no such substances were found on his person, that the controlled substances found in the apartment were located among the girlfriend's possessions on her side of the shared bedroom and that she provided police with the combination for the safe. Had the jury credited these arguments, a different verdict would not have been unreasonable; thus, this Court "must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Bleakley, 69 NY2d 490, 495 [1987] [internal quotation marks and citations omitted]).
To demonstrate that defendant constructively possessed the narcotics, the People were required to show that he "exercised dominion or control over the property by a sufficient level of control over the area in which the contraband is found" (People v Manini, 79 NY2d 561, 573 [1992] [internal quotation marks and citation omitted]; accord People v Alberts, 161 AD3d 1298, 1300 [2018], lv denied 31 NY3d 1114 [2018]; see Penal Law § 10.00 [8]; People v Palin, 158 AD3d 936, 938 [2018], lv denied 31 NY3d 1016 [2018]). The element of knowledge may also be inferred from proof of a defendant's dominion and control (see People v Muhammad, 16 NY3d 184, 188 [2011]). It is undisputed that defendant resided in the apartment, had a key to the premises and shared the bedroom where the narcotics were found with the girlfriend. The officers who conducted the search testified that, although the possessions that appeared to belong to a man were located primarily on the left side of the bedroom, the division was not absolute; some items were commingled on both sides, supporting an inference that both parties used the whole room. Moreover, the bedroom was configured in such a way that defendant had to pass through the right side of the room, where the narcotics were found, to reach the left side where his belongings were primarily located. There was a letter addressed to defendant in the dresser [*4]where some of the narcotics were found, and the safe that held most of the cash was in plain view and placed on the side of the room where defendant's possessions were located. There was no testimony that the bedroom closet where the shoes containing drugs were found was locked or that other efforts had been made to conceal or limit access to its contents. Moreover, the digital scale and other items associated with the sale of drugs were found in common areas of the apartment. The jury could thus reasonably infer that defendant had dominion and control over the area where the narcotics were found. Viewing the evidence in a neutral light and deferring to the jury's credibility determinations, we find that the verdict is supported by the weight of the evidence (see People v Palin, 158 AD3d at 940; People v Luciano, 152 AD3d 989, 993-994 [2017], lv denied 30 NY3d 1020 [2017]; People v Paige, 77 AD3d at 1196).
Defendant next contends that he did not receive meaningful representation at trial due to errors by his defense counsel. We reject defendant's claim that his counsel failed to object to the People's use of defendant's silence against him; upon review, we find that defendant had not made an unequivocal request on either alleged occasion (see People v Johnson, 150 AD3d 1390, 1395 [2017], lv denied 29 NY3d 1128 [2017]) and, thus, such an objection would not have been successful (see generally People v Caban, 5 NY3d 143, 152 [2005]). More troubling is defendant's claim that his counsel erred by eliciting damaging information from a detective during cross-examination. Upon defense counsel's inquiry as to why police had not tested items found in the apartment for fingerprints, the detective responded that "based on [the] investigation, [police] had information that both parties were selling narcotics." Defense counsel initially objected, but then withdrew his objection. Although there may have been valid strategic reasons to ask the question about fingerprinting (see generally People v Satterfield, 66 NY2d 796, 798-799 [1985]), defendant argues that counsel's question unintentionally elicited prejudicial evidence connecting him to the sale of drugs that would not otherwise have been before the jury. Taken alone, even if counsel erred in this regard, the detective's brief, nonspecific statement was not "so egregious and prejudicial" as to deprive defendant of a fair trial (People v Turner, 5 NY3d 476, 479 [2005] [internal quotation marks and citation omitted]).
However, defendant also claims that he was deprived of a fair trial by his counsel's admission into evidence of other highly prejudicial information connecting him to the sale of drugs. During cross-examination, defense counsel elicited admissions from Brady that he had made certain mistakes in obtaining the search warrant — first, by specifying in the warrant that defendant's vehicle was to be searched when the application had instead sought authority to search his apartment, and second, by an error as to the timing of the investigation. When Brady could not recall the answer to one of defense counsel's questions about the application, counsel used it to refresh his recollection, and then offered it into evidence. The People objected on the ground of relevance, and defense counsel responded that the application showed that Brady, who had testified as an expert on drug investigations, had nevertheless made mistakes in applying for the warrant. County Court overruled the objection and admitted the application.
Thereafter, out of the jury's presence, County Court specifically asked defense counsel whether there was a strategic purpose for admitting the application, and warned that it contained information that was not otherwise before the jury. The document stated, as grounds, that a confidential informant (hereinafter CI) had informed Brady that both defendant and the girlfriend had sold crack cocaine to the CI in their apartment within the past two weeks, that the CI had identified a photograph of defendant as the male who had sold him drugs, and that the CI had seen two handguns on defendant's bed within that same time period. The court discussed the prejudicial nature of this information with defense counsel, referencing People v Wlasiuk (90 AD3d 1405, 1412-1413 [2011]), in which this Court reversed a murder conviction on the ground [*5]of ineffective assistance of counsel in part because defense counsel had offered a logbook containing prejudicial hearsay into evidence. Counsel stated that he was aware of the contents of the application, confirmed that he had offered the application to establish Brady's errors, and further advised that the decision had been made after discussion with defendant. As for the reference to handguns, counsel stated that the "whole point" was that no handguns were found in the search.
To prove his claim of ineffective assistance, "defendant must demonstrate the absence of strategic or other legitimate explanations for counsel's alleged failure" (People v Nicholson, 26 NY3d 813, 831 [2016]; see People v Hilton, 166 AD3d 1316, 1320 [2018]; People v Phillips, 96 AD3d 1154, 1156 [2012], lv denied 19 NY3d 1000 [2012]). Here, counsel expressly stated his strategic purpose for admitting the application, and it is well established that "counsel's efforts should not be second-guessed with the clarity of hindsight to determine how the defense might have been more effective" (People v Benevento, 91 NY2d 708, 712 [1998]; accord People v Thomas, 105 AD3d 1068, 1071 [2013], lv denied 21 NY3d 1010 [2013]). Nevertheless, there was no essential connection between counsel's strategic purpose to show the jury the errors in the application and the entirely separate information about the CI's alleged drug transactions. The latter information was not only irrelevant to the purpose for which counsel offered the application into evidence, but was also inadmissible hearsay, as the CI did not testify at trial. Defense counsel offered no strategic explanation — nor can this Court conceive of one — for failing either to request redaction of the information about the CI's claims from the application, or to ask for a limiting instruction to inform the jury of the limited purpose for which the application was admitted, directing it not to consider the hearsay information about the CI's claims as evidence of defendant's guilt.
It must be further considered that the information in the application would not have otherwise come before the jury; neither Brady nor any other witness mentioned the CI's claims at trial, no witness mentioned handguns, and no one claimed to have bought drugs from defendant or witnessed drug transactions in which he participated. The only other trial evidence that directly indicated that defendant had participated in drug transactions was that described above, when defense counsel asked the detective about the failure to obtain fingerprints.
As defendant argues, the highly prejudicial nature of the information in the application was revealed within the People's summation. At the very beginning of the closing argument, before any discussion of the physical evidence, the prosecutor immediately brought up the CI's claims, arguing that the information in the application established that defendant and the girlfriend "were in an enterprise to sell narcotics." The prosecutor advised the jury to read the application, asserting that it "clearly show[ed]" that the girlfriend did not act alone in possessing and selling drugs, that defendant and the girlfriend acted together, and that the drugs found in the bedroom belonged jointly to defendant and the girlfriend. The prosecutor returned to the application later, arguing that, although defendant asserted that there was no evidence that he knew drugs were in the apartment, the jury should "[l]ook at the search warrant application. That might help answer that question."[FN3] Despite the inadmissible nature of the application's hearsay information and defense counsel's prior statement as to the limited purpose for which he had offered it into evidence, counsel did not object to any of the prosecutor's statements about [*6]the application. Accordingly, the jury was never informed that the information about the CI's claims was inadmissible hearsay, and was instead directly advised, without contradiction, that it could consider the information as substantive evidence of defendant's guilt (compare People v Hughes, 72 AD3d 1121, 1123 [2010]; People v Montgomery, 22 AD3d 960, 962-963 [2005]).
A defendant receives the effective assistance of counsel when "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Baldi, 54 NY2d 137, 147 [1981]; accord People v Speaks, 28 NY3d 990, 992 [2018]; People v Mangarillo, 152 AD3d 1061, 1066 [2017]). A defendant has a right to a fair trial, not a perfect one; thus, a single error or several minor errors in an otherwise competent performance will not ordinarily require reversal so long as, taken singly or together, they did not deprive the defendant of a fair trial (see People v Flores, 84 NY2d 184, 187 [1994]). However, in rare cases, even a single error "may be 'so egregious and prejudicial as to deprive a defendant of his [or her] constitutional right' to a fair trial" (People v Flowers, 28 NY3d 536, 541 [2016], quoting People v Turner, 5 NY3d at 479).
Here, rather than a single error, we are confronted with a set of three closely-related errors at two stages of the trial: the failure to redact the irrelevant and prejudicial hearsay from the search warrant application before introducing it for the limited purpose of revealing Brady's errors; the failure to request a limiting instruction that would have advised the jury of that purpose; and the subsequent failure to object to the prosecutor's repeated exhortations to the jury to rely on the application's hearsay information as proof of defendant's guilt. These errors, as well as the prejudicial testimony elicited from the detective, gain particular significance in the light of the close nature of the other evidence. The admissible proof that defendant constructively possessed the contraband and had the requisite intent to sell, although adequate to support the verdict, was not overwhelming. Further, the information in the application directly contradicted counsel's theory of defense, which was that the girlfriend, and not defendant, possessed and sold the drugs found in the apartment. Thus, although counsel's challenged conduct took place in the context of an otherwise effective performance, we find that the cumulative effect of his errors deprived defendant of a fair trial and requires reversal of the judgment (see People v Wlasiuk, 90 AD3d at 1412-1413; see also People v Montgomery, 22 AD3d at 962-963; People v Greene, 306 AD2d 639, 643 [2003], lv denied 100 NY2d 594 [2003]).
Defendant's remaining contentions are rendered academic by this determination.
Clark, Mulvey, Aarons and Rumsey, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Broome County for a new trial.



Footnotes

Footnote 1: Contrary to the People's argument, defendant's convictions do not preclude him from raising this claim, as his appellate challenge to the grand jury proceeding is not based on the legal sufficiency of the evidence supporting the indictment (see People v Huston, 88 NY2d 400, 411 [1996]).

Footnote 2: Defendant later consented to a search of his vehicle, in which no contraband was found.

Footnote 3: The prosecutor also referenced the detective's testimony that police had information that defendant was selling drugs, but placed less emphasis on that evidence than on the search warrant application.